UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SASA MASLIC, et al., | Case No. 21-CV-02556-LHK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| ISM VUZEM D.O.O., et al., | Re: Dkt. No. 22 |
| Defendants. | |

Plaintiffs Saša Maslic, Ivan Drzaic, Robert Hernaus, Leopold Hubek, Leon Hudoldetnjak, Elvis Koscak, Tomica Panic, Stjepan Papes, Željko Puljko, Darko Štante, Nedeljko Živani, Gogo Rebic, and Mitja Pogorevc (collectively, "Plaintiffs") were employees of Defendants ISM Vuzem d.o.o.; ISM Vuzem USA, Inc.; Vuzem USA, Inc.; HRID-MONT d.o.o.; Ivan Vuzem; and Robert Vuzem (collectively, "Vuzem").

Plaintiffs bring this putative class action against Vuzem, Defendant Eisenmann Corporation ("Eisenmann"), and Defendant Tesla, Inc. ("Tesla"). Plaintiffs allege various violations of federal and California labor law, all of which arise from Plaintiffs' time working at a facility owned by Tesla. ECF No. 1-1 ("First Amended Complaint" or "FAC").

Before the Court is Eisenmann and Tesla's motion to dismiss five claims in Plaintiffs' First

Amended Complaint. ECF No. 22. Having considered the parties' submission, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Eisenmann and Tesla's motion to dismiss.

**I.   BACKGROUND**

**A. Factual Background**

Plaintiffs are residents of Bosnia and Herzegovina, Slovenia, or Croatia and were employees of Defendant Vuzem, which is a Slovenian construction company. FAC ¶¶ 1, 16. Vuzem has several subsidiaries in the United States, including in San Pedro, California. *Id.* ¶ 6.

Defendant Eisenmann is a "manufacturer of specialized paint shop equipment." *See Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 933 (N.D. Cal. 2019). Eisenmann is a Delaware corporation with its principal place of business in Illinois. FAC ¶ 11.

In 2014, Vuzem and Eisenmann contracted with Defendant Tesla, a Delaware corporation with its principal place of business in California, to perform a construction project at Tesla's facility in Fremont, California. *Id.* ¶¶ 10, 15–16. Eisenmann was the general contractor for the project and Vuzem was the subcontractor. *Id.* ¶¶ 48, 50. According to Plaintiffs, Vuzem and Eisenmann "earned millions of dollars from the contracts." *Id.* ¶16.

Vuzem was primarily responsible for supplying labor for the construction project and the "work itself was performed by individuals who were employees of [Vuzem]," including Plaintiffs. *Id.* ¶¶ 16–17. Although Vuzem knew that Plaintiffs would be performing unskilled construction work, Vuzem brought Plaintiffs to the United States on B-1 visas that are generally reserved for skilled work. *Id.* ¶ 128. Additionally, although California law requires companies to obtain certain licenses to perform construction work in California, neither Vuzem nor Eisenmann obtained such licenses for themselves or for Plaintiffs. *Id.* ¶¶ 47, 49, 51.

Plaintiffs performed construction work at Tesla's facility from November 2014 through June 2016. *Id.* ¶ 17. During that time, Plaintiffs lived in apartments provided by Vuzem. *Id.* ¶¶ 52–53. Additionally, pursuant to Eisenmann's instructions, Plaintiffs traveled to the construction site in vans provided by Vuzem. *Id.* ¶¶ 94–95. The vans picked Plaintiffs up at the

apartments "prior to 6:30 a.m. every day Monday through Saturday" and returned Plaintiffs "to their assigned housing units at 6:15 or 7:15 p.m. Monday through Friday . . . and at 4:15 or 5:15 on Saturdays." *Id.* ¶ 53.  Plaintiffs worked similar hours "at least every other Sunday." *Id.* Security guards employed by Tesla checked each Plaintiff in and out of the Tesla site every day. *Id.* ¶ 128.  Additionally, "Eisenmann and Tesla's supervisors and management" were often present at the site to oversee Plaintiffs' work.  *Id.* ¶ 129.

Plaintiffs allege that Vuzem, Eisenmann, and Tesla failed to provide Plaintiffs with adequate compensation and benefits.  Specifically, as relevant to the instant motion, Plaintiffs allege that they were not paid the minimum wage, *id.* ¶¶ 55–57; that they were not paid overtime wages when they worked more than eight hours a day, more than forty hours a week, or seven days in a row, *id.* ¶ 61; that they were not provided with rest periods, *id.* ¶ 65; and that, when they were terminated as employees, they were not provided with all unpaid compensation, *id.* ¶ 81.

Plaintiffs also allege that Vuzem used threats of violence and economic reprisal to coerce Plaintiff Maslic into working under dangerous conditions.  According to Plaintiffs, Vuzem "caused their workers, including Plaintiff Maslic, to believe they had to provide labor or they would be subject to serious harm, including loss of visa status and civil and criminal prosecutions." *Id.* ¶ 114.  Additionally, Vuzem "threatened to withhold pay if any of their employees became too sick to work or reported a job injury." *Id.* ¶ 115.  As a result, multiple employees, including Plaintiff Maslic, suffered serious injuries.  FAC ¶¶ 122, 126.

**B. Procedural History of the Instant Case**

On August 27, 2020, Plaintiffs filed a complaint in the Superior Court for the County of Alameda.  ECF No. 1 ¶ 12.  Plaintiffs did not effectuate service of this complaint.  *Id.*

On October 29, 2020, Plaintiffs filed the First Amended Complaint ("FAC").  *Id.* ¶ 13. The FAC asserts ten claims under California and federal labor law:

(1)    failure to pay minimum wage in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 *et seq.*, against Vuzem, ECF No. 1-1 at ¶¶ 24–35;

(2)    failure to pay overtime in violation of FLSA against Vuzem, *id.* ¶¶ 36–44;

3

| | | |
|---|---|---|
| (3) | failure to pay minimum wage under California law against all defendants, *id.* ¶¶ 45–59; | |
| (4) | failure to pay overtime wages under California law against all defendants, *id.* ¶¶ 60–63; | |
| (5) | failure to provide adequate rest periods under California law against all defendants, *id.* ¶¶ 64–67; | |
| (6) | failure to provide Plaintiffs with accurate wage statements under California law against Vuzem, *id.* ¶¶ 68–76; | |
| (7) | failure to pay "waiting time penalties" under California law against all defendants, *id.* ¶¶ 77–84; | |
| (8) | failure to adhere to California labor laws for a class of 177 employees against Vuzem, *id.* ¶¶85–106; | |
| (9) | violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595 *et seq.*, and the California Trafficking Victims Protection Act ("CTVPA") against all defendants, *id.* ¶¶ 107–39; and | |
| (10) | violation of California's workers' compensation laws under California Labor Code § 3706 against Vuzem, *id.* ¶¶140–46. | |

On March 9, 2021, Eisenmann and Tesla were served the FAC. *Id.* On April 8, 2021, Eisenmann and Tesla filed a notice of removal in this Court stating that the Court has federal question jurisdiction over Plaintiffs' FLSA and TVPRA claims and supplemental jurisdiction over Plaintiffs' state law claims. ECF No. 1 ¶¶ 4–5. As an alternative basis for removal, Eisenman and Tesla stated that the Court has original jurisdiction over all Plaintiffs' claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453. ECF No. 1 ¶ 6.

On May 5, 2021, Plaintiffs filed a Motion to Remand. ECF No. 17. On May 17, 2021, Plaintiffs filed a Motion for Extension of Time to File a Supplemental Motion to Remand. ECF No. 20. On May 19, 2021, Eisenmann and Tesla filed an Opposition to Plaintiffs' Motion to Remand. ECF No. 24. On May 21, 2021, Eisenmann and Tesla filed an Opposition to Plaintiffs'

4
Case No. 21-CV-02556-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Motion for Extension of Time. ECF No. 25. On May 26, 2021, Plaintiffs filed a reply in support of their Motion to Remand. ECF No. 26. On June 2, 2021, Plaintiffs filed a reply in support of their Motion for Extension of Time. ECF No. 29.

In the meantime, on May 17, 2021, Eisenmann and Tesla filed a motion to dismiss the five claims that Plaintiffs bring against Eisenmann and Tesla: (1) failure to pay minimum wage under California law; (2) failure to pay overtime wages under California law; (3) failure to provide adequate rest periods under California law; (4) failure to pay waiting time penalties under California law; and (5) violation of the TVPRA and CTVPA. ECF No. 22 ("Mot."). On June 1, 2021, Plaintiffs filed an opposition to Eisenmann and Tesla's motion to dismiss. ECF No. 28 ("Opp."). On June 8, 2021, Eisenmann and Tesla filed a reply. ECF No. 31 ("Reply").

On October 26, 2021, the Court granted in part and denied in part Plaintiffs' motion to remand. ECF No. 42. The Court held that it has federal question jurisdiction over Plaintiffs' claims under FLSA and TVPRA and has supplemental jurisdiction over six of Plaintiffs' state law claims. *Id.* at 6–12. However, the Court held that Plaintiffs' claim under California Labor Code § 3706 is not subject to removal. *Id.* at 17. Thus, the Court severed and remanded that claim. *Id.* at 13–17. The Court denied Plaintiffs' Motion for Extension of Time. *Id.* at 19.

## II.  LEGAL STANDARD

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For

purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

Eisenmann and Tesla move to dismiss the five claims that Plaintiffs bring against Eisenmann and Tesla: (1) failure to pay minimum wage under California law; (2) failure to pay overtime wages under California law; (3) failure to provide adequate rest periods under California law; (4) failure to pay waiting time penalties under California law; and (5) violation of the TVPRA and CTVPA. ECF No. 22. Eisenmann and Tesla contend that the first four claims, *i.e.*, the "wage and hour claims," must be dismissed as untimely and because neither Eisenmann nor

Tesla was Plaintiffs' employer under California law. *Id.* at 10–14. Eisenmann and Tesla contend that the fifth claim, *i.e.*, the "coerced labor" claim, must be dismissed because Plaintiffs fail to allege Eisenmann and Tesla benefited from or knew about Plaintiffs' coerced labor. *Id.* at 14–20.

The Court first addresses the wage and hour claims and concludes that those claims are untimely. Accordingly, the Court need not address whether Eisenmann and Tesla were Plaintiffs' employers. The Court then addresses the coerced labor claim and concludes that Plaintiffs have adequately alleged Eisenmann and Tesla benefited from and knew about Plaintiffs' coerced labor.

### A. Plaintiffs' Wage and Hour Claims Are Untimely

Eisenmann and Tesla argue that the limitations period for each of Plaintiffs' "wage and hour claims" expired in July 2019 at the latest and that these claims are untimely because Plaintiffs filed their complaint in August 2020. Mot. at 10. For the reasons below, the Court agrees.

A limitations period of three years applies to Plaintiffs' minimum wage, overtime wage, and rest period claims, and a limitations period of 1 year applies to Plaintiffs' waiting time penalties claim. The California Code of Civil Procedure creates a limitations period of three years for any "action upon a liability created by statute, other than a penalty or forfeiture," Cal. Civ. Proc. Code § 338, and a limitations period of one year for any "action upon a statute for a penalty or forfeiture," *id.* § 340. Accordingly, all actions seeking to recover "wages" under the California Labor Code have a limitations period of three years. *See Murphy v. Kenneth Cole Productiosn, Inc.*, 40 Cal. 4th 1094, 1102 (2007). "Wages" include "all amounts for labor performed by employees of every description" as well as "those benefits to which an employee is entitled as part of his or her compensation, including money, room, board, clothing, vacation pay, and sick pay." *Id.* at 1103 (internal citations omitted). By contrast, a "penalty is that which an individual is allowed to recover against a wrong-doer, as a satisfaction for the wrong or injury suffered." *Id.* at 1104 (internal citations omitted). Thus, a limitations period of three years applies to Plaintiffs' claims that Eisenmann and Tesla failed to provide minimum wages, overtime wages, and adequate rest periods, all of which were compensation or benefits owed to Plaintiffs for their labor. In turn, a limitations period of one year applies to Plaintiffs' claim for waiting time penalties, which are

7

1    penalties imposed on employers who fail to pay wages in a timely manner.  Cal. Lab. Code § 203.

2        Because Plaintiffs' wage and hour claims all accrued in June 2016, those claims are

3    untimely.  Plaintiffs allege that they worked at the Tesla site from November 2014 through June

4    2016.  FAC ¶ 17.  A wages claim accrues, and the limitations period starts running, on the payday

5    following the period when the plaintiff performed the labor for which the plaintiff is owed wages.

6    *See, e.g.*, *Aubry v. Goldhor*, 201 Cal. App. 3d 399, 406 (Ct. App. 1988) ("[A] separate cause of

7    action for overtime compensation accrues on each regular payday immediately following the work

8    period during which the services were rendered and for which overtime compensation is

9    claimed.").  Thus, the latest possible date that Plaintiff could have brought any claims for

10   minimum wages, overtime wages, or adequate rest periods was June 2019.  Similarly, because

11   Plaintiffs' employment ended by June 2016, the latest possible date that Plaintiff could have

12   brought a claim for waiting time penalties was June 2017.

13       Plaintiffs make no response to Eisenmann and Tesla's time bar argument except a passing

14   reference to tolling.  However, Plaintiffs have not articulated any cognizable reason that their

15   claims should be tolled.  Plaintiffs allege that the wage claims in the instant case "were tolled . . .

16   during the pendency of Superior Court action[] HG15773484 entitled 'Gregor Lesnik v ISM

17   Vuzem USA, Inc., et al' from not less than September 25, 2015 through July 18, 2016."  FAC

18   ¶ 22.  Plaintiffs do not explain why this lawsuit in California state court, which does not appear to

19   involve Plaintiffs, would toll Plaintiffs' claims.  Moreover, even if this lawsuit did toll Plaintiffs'

20   claims, the limitations period expired in July 2019 and Plaintiffs filed the instant FAC more than a

21   year later in August 2020.

22       Because Plaintiffs have effectively failed to respond to Eisenmann and Tesla's argument

23   that the "wage and hour claims" are untimely, it is unlikely that Plaintiffs will be able to cure this

24   defect.  Indeed, Plaintiffs' counsel previously brought identical wage and hour claims against

25   Eisenmann and Tesla in a prior case in this Court, *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923

26   (N.D. Cal. 2019).  In *Lesnik*, which also involved Plaintiff Papes, Eisenmann and Tesla moved to

27   dismiss the plaintiffs' wage and hour claims as untimely.  *See id.* at 941.  Accordingly, Plaintiffs

28

8
Case No. 21-CV-02556-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

and their counsel were on notice that Eisenmann and Tesla would raise a time bar argument regarding the same wage claims in the instant case and should have been able to prepare an appropriate response. Moreover, as explained in the Court's October 26, 2021 order denying Plaintiffs' motion to remand the wage claims, Plaintiffs attempted to avoid an adverse ruling in *Lesnik* by voluntarily dismissing Lesnik's wage claims against Eisenmann and Tesla in December 2018 and filing the instant case in state court, which Eisenmann and Tesla removed to this Court. ECF No. 42 at 4. Accordingly, because Plaintiffs have failed to offer a response to the time bar argument and because Plaintiffs' wage claims are the same claims that the *Lesnik* plaintiffs voluntarily dismissed almost three years ago, allowing leave to amend would prejudice Eisenmann and Tesla, would cause undue delay, and would be futile. *See Leadsinger*, 512 F.3d at 532.

Thus, the Court GRANTS Eisenmann and Tesla's motion to dismiss the four "wage and hour claims" with prejudice.

### B. Plaintiffs Have Adequately Alleged that Eisenmann and Tesla Violated the TVPRA

Eisenmann and Tesla argue that Plaintiffs have failed to a state a claim under the TVPRA because Plaintiffs have not adequately alleged that Eisenmann and Tesla benefited from Plaintiffs' coerced labor, Mot. at 16, or that Eisenmann and Tesla had knowledge of Plaintiffs' coerced labor, *id.* at 16–19. For the reasons below, the Court rejects these arguments.

The TVPRA prohibits employers from using coercive methods to obtain labor. Specifically, the TVPRA prohibits obtaining a person's labor or services in four ways:

(1) by means of force, threats of force, physical restraints, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

9
Case No. 21-CV-02556-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

18 U.S.C. §§ 1589(a)(1)–(4). The TVPRA enforces this prohibition by providing to victims of coerced labor a cause of action against the "perpetrator." *Id.* § 1595(a).

Additionally, the TVPRA provides to victims of coerced labor a cause of action against any third party who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known" relied on coerced labor. *See id.* To state a claim under this cause of action, a plaintiff must allege that the defendant: (1) obtained a financial benefit from a venture that relied on the plaintiff's coerced labor and (2) knew or should have known about the plaintiff's coerced labor. *See Lesnik*, 374 F. Supp. 3d at 952.

Plaintiffs allege that Vuzem used coercive methods to obtain Plaintiffs' labor, that Eisenmann and Tesla benefited from a venture that relied on Plaintiffs' coerced labor, and that Eisenmann and Tesla knew or should have known about Plaintiffs' coerced labor. *See* FAC ¶¶ 111–135. Because Eisenmann and Tesla concede that Plaintiffs have adequately alleged that Vuzem used coercive methods to obtain Plaintiffs' labor, the Court need not address that element. Mot. at 15. Accordingly, the Court first addresses whether Plaintiffs have adequately alleged that Eisenmann and Tesla benefited from a venture that relied on Plaintiffs' coerced labor. The Court then addresses whether Plaintiffs have adequately alleged that Eisenmann and Tesla knew or should have known about Plaintiffs' coerced labor.

### 1. Plaintiffs Have Adequately Alleged that Eisenmann and Tesla Benefited from a Venture That Relied on Plaintiffs' Coerced Labor

The Court first must determine whether Eisenmann and Tesla "benefit[ed], financially or by receiving anything of value from participation in a venture" that relied on Plaintiffs' coerced labor. 18 U.S.C. § 1595(a). Because "[c]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings," the term "anything of value" includes benefits besides financial benefits. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).

Plaintiffs adequately allege that, by entering a contract which relied on Plaintiffs' coerced labor, Eisenmann and Tesla received value from Plaintiffs' coerced labor. Plaintiffs allege that Tesla contracted with Eisenmann to perform construction work at a Tesla facility and that

10

Eisenmann hired Vuzem as a subcontractor to perform all the necessary labor. FAC ¶ 16. Thus, the "work itself was performed by individuals who were employees of [Vuzem]," including Plaintiffs. *Id.* ¶¶ 16–17. Eisenmann "earned millions of dollars from the contracts" and Tesla obtained laborers who made improvements to Tesla's facility. *Id.* Whatever the precise scope of the phrase "anything of value," financial compensation and labor services qualify. *See Ruelas v. County of Alameda*, 519 F. Supp. 3d 636 (N.D. Cal. 2021) (holding that company which prepared food for county jail "receive[d] a financial benefit in the form of an 'economic windfall as a result of the uncompensated labor of prisoners confined in [the] jail'") (internal citation omitted). Indeed, in an action involving an identical arrangement between Vuzem, Eisenmann, and Tesla, this Court held that Eisenmann and Tesla benefited from Vuzem's coercive labor methods because "Vuzem's actions were committed to fulfill a contract signed with Tesla and Eisenmann." *See Lesnik*, 374 F. Supp. 3d at 952–53

Eisenmann and Tesla's arguments to the contrary have no merit. Eisenmann and Tesla summarily contend that Plaintiffs "do[] not link any benefit provided by Vuzem to either company." Mot. at 16. As an initial matter, Eisenmann and Tesla misread the TVPRA, which provides a cause of action against any person who benefits "from participation in a venture" that relied on coerced labor. 18 U.S.C. § 1595(a). Thus, there is no requirement that Vuzem *directly* provided a benefit to either Eisenmann or Tesla. The only requirement is that Eisenmann and Tesla participated in a venture with Vuzem and derived a benefit from that venture. Regardless, as explained, Plaintiffs have adequately alleged that Vuzem provided Eisenmann and Tesla with benefits by supplying labor for a construction contract from which Eisenmann and Tesla received significant value.

Accordingly, the Court concludes that Plaintiffs have adequately alleged that Eisenmann and Tesla benefited from a venture that relied on Plaintiffs' coerced labor.

### 2. Plaintiffs Have Adequately Alleged that Eisenmann and Tesla Knew or Should Have Known About Plaintiffs' Coerced Labor

The Court also must determine whether Eisenmann and Tesla knew or should have known

about Plaintiffs' coerced labor.

Plaintiffs typically satisfy the knowledge element of a TVPRA claim by alleging that a defendant's employees witnessed coercive labor practices or observed indicia of coerced labor. In *Ruelas*, a court in this district considered whether a food vendor for a county jail could be held liable under the TVPRA for the jail's practice of forcing prisoners to prepare food without pay. *See* 519 F. Supp. 3d at 650–51. The court held that the plaintiff had satisfied the knowledge element by alleging that the vendor's employees "observe[d] the Sheriff's deputies' supervision of the prisoner-employees, including threats of force." *Id.* (internal citation omitted). However, even where a defendant's employees have not directly observed coercive interactions between the plaintiffs and their employers, "indicia of abuse are enough to put a supervisor who likely saw those indicia on notice." *See Bridges v. Poe*, 487 F. Supp. 3d 1250 (N.D. Al. 2020) (citing *S.Y. v. Naples Hotel Co.*, 476 F.Supp.3d 1251 (M.D. Fla. August 5, 2020)). For example, in *Naples Hotel*, a court in the Middle District of Florida held that a hotel operator should have known about sexual abuse in the hotel when traffickers rented rooms with cash, men visited those rooms with no luggage, and older men escorted young women around the hotel. *See* 476 F. Supp. 3d at 1257.

Plaintiffs plausibly allege that Eisenmann employees witnessed Plaintiffs' coerced labor or, at the very least, observed indicia of Plaintiffs' coerced labor. As an initial matter, Plaintiffs allege that Eisenmann managers often were present at the Tesla site to supervise Plaintiffs' work. *Id.* ¶ 129. Because these allegations make plausible that Eisenmann's employees directly witnessed Vuzem's treatment of Plaintiffs, these allegations support an inference that Eisenmann was aware of Plaintiffs' coerced labor. *See Ruelas*, 519 F. Supp. 3d at 650. Additionally, although Plaintiffs do not allege that Eisenmann directly witnessed Vuzem's threats, Plaintiffs allege that Eisenmann observed other indicia of coerced labor. Specifically, Eisenmann hired Vuzem, a Slovenian company with Slovenian executives, to provide Eisenmann with labor for the construction project. *See* FAC ¶¶ 9, 16, 48. Eisenmann made this hiring decision even though neither Vuzem nor Plaintiffs were licensed to perform construction work in California. *See id.* ¶ 47. Additionally, Eisenmann was aware of Plaintiffs' living conditions and long working hours

because Eisenmann directed Vuzem to use vans to transport Plaintiffs between the Tesla site and the company provided apartments. *Id.* ¶¶ 94–95.

Courts have found similar allegations "sufficient to infer a defendant knew or should have known of [a] sex trafficking venture." *Naples Hotel*, 476 F. Supp. 3d at 1251. Specifically, allegations that a hotel knew sex traffickers paid for hotel rooms with cash; knew men visited those rooms with no luggage; and knew older men escorted young women around the hotel support an inference that a hotel knows about sex trafficking. *See id.*

Thus, allegations that Eisenmann supervised Plaintiffs' work; knew Vuzem brought Plaintiffs to the United States from foreign countries; knew Vuzem and Plaintiffs were not licensed to perform construction work; knew Vuzem temporarily housed Plaintiffs in company owned apartments; and knew Vuzem controlled Plaintiffs' movements to and from the work site support an inference that Eisenmann was aware of Plaintiffs' coerced labor. Indeed, in *Lesnik*, a related case in which Vuzem employees brought a TVPRA claim against Eisenmann and Tesla, the Court relied on comparable allegations to reach the same conclusion regarding Eisenmann. 374 F. Supp. 3d at 953.

For similar reasons, Plaintiffs plausibly allege that Tesla employees witnessed Plaintiffs' coerced labor or, at the very least, observed indicia of Plaintiffs' coerced labor. At the pleading stage, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *See Manzarek*, 519 F.3d at 1031. Thus, Plaintiffs' allegations need only support an inference that Tesla was aware of Plaintiffs' coerced labor. Plaintiffs point out that Tesla owned the site at which Plaintiffs worked for nearly two years and that, like Eisenmann, Tesla deployed managers to the site to supervise Plaintiffs' work. FAC ¶¶ 10, 15–16, 129. Because these allegations make plausible that Tesla's employees directly witnessed Vuzem's treatment of Plaintiffs, these allegations support an inference that Tesla was aware of Plaintiffs' coerced labor. *See Ruelas*, 519 F. Supp. 3d at 650. Plaintiffs also identify indicia of abuse which reinforce this inference. Specifically, Plaintiffs allege that Tesla's security guards checked each Plaintiff in and out of the site every day. FAC ¶ 128. Additionally,

13

Plaintiffs point out that Tesla hired Eisenmann, and by extension Vuzem, even though Eisenmann was not licensed to perform construction work in California. *Id.* ¶ 51.

Taken together and construed in Plaintiffs' favor, allegations that Tesla employees supervised Plaintiffs' work; kept track of Plaintiffs' comings and goings from the site; and knew Eisenmann, Vuzem, and Plaintiffs were not licensed to perform construction work support an inference that Tesla was aware of Plaintiffs' coerced labor. Indeed, in *Lesnik*, the Court relied on comparable allegations to reach the same conclusion regarding Tesla. 374 F. Supp. 3d at 953.

Finally, although Eisenmann and Tesla rely heavily on the District of Oregon's decision in *A.B. v. Wyndham Hotels & Resorts, Inc.*, No. 3:19-CV-01992-IM, 2021 WL 1235241 (D. Or. Mar. 31, 2021), that decision does not provide Eisenmann and Tesla with any support. In *A.B.*, the District of Oregon concluded that a victim of sex trafficking failed to allege that a national hotel brand knew or should have known that she had been trafficked at local hotels operating under franchise agreements with the brand. *Id.* at *5–6. Although the plaintiff alleged that there were "apparent red flags" of trafficking, the court explained that these "red flags" only "support[ed] a theory that hotels where Plaintiff was trafficked knew or should have known of Plaintiff's trafficking." *Id.* at *6. This knowledge could not be imputed to the national hotel brand, which had no affiliation with the hotels apart from a franchising agreement. *Id.* By contrast, in the instant case, Plaintiffs have alleged that direct employees of Eisenmann and Tesla were aware of Plaintiffs' coerced labor. Eisenmann and Tesla have provided no reason that the knowledge of those employees should not be imputed to their corporate employers.

Thus, the Court concludes that Plaintiffs have adequately alleged that Eisenmann and Tesla knew or should have known about Plaintiffs' coerced labor. The Court DENIES Eisenmann and Tesla's motion to dismiss Plaintiffs' TVPRA claim.

### 3. Plaintiffs Have Adequately Alleged that Eisenmann and Tesla Violated the CTVPA

Plaintiffs' CTVPA claim is based on Cal. Civil Code § 52.5, which allows victims to seek damages for violations of Cal. Penal Code § 236.1, which defines trafficking and forced labor

crimes. This Court has held, and Eisenmann and Tesla do not dispute, that "the CTVPA does not provide a separate basis for liability from the TVPRA." *Lesnik*, 374 F. Supp. 3d at 954. Because Plaintiffs' TVPRA claim survives, Plaintiffs' CTVPA claim does as well.

Thus, the Court DENIES Eisenmann and Tesla's motion to dismiss Plaintiffs' CTVPA claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS with prejudice the motion to dismiss Plaintiffs' four wage and hour claims as those claims relate to Eisenmann and Tesla. The Court DENIES the motion to dismiss Plaintiffs' TVPRA and CTVPA claim as that claim relates to Eisenmann and Tesla.

**IT IS SO ORDERED.**

Dated: November 19, 2021

*Lucy H. Koh*
LUCY H. KOH
United States District Judge