TESLA, INC.
Aaron Langberg (SBN 284975)
31353 Huntwood Avenue
Hayward, CA 94544
Telephone: (510) 828-8959
alangberg@tesla.com

FROST BROWN TODD LLP
Aaron M. Bernay, *pro hac vice*
Ryan W. Goellner, *pro hac vice*
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
abernay@fbtlaw.com
rgoellner@fbtlaw.com

*Attorneys for Defendant*
*Tesla, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SASA MASLIC, et al.,

Plaintiffs,

vs.

ISM VUZEM D.O.O., et al.,

Defendants.

Case No. 5:21-cv-02556-BLF-SVK

**DEFENDANT TESLA, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (DKT. NO. 127)**

Judge: Hon. Beth Labson Freeman
Hearing Date: May 23, 2024
Time: 9 A.M.
Courtroom: 3, 5th Floor

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. THE COURT MUST STRIKE PLAINTIFF'S SHAM DECLARATION ........ 1

III. PLAINTIFF'S HUMAN TRAFFICKING CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT WHERE PLAINTIFF ADMITS THAT HE VOLUNTARILY ACCEPTED SUCCESSIVE ASSIGNMENTS AT TESLA ........ 4

IV. MASLIC DOES NOT OFFER ANY SPECIFIC EVIDENCE TO SUPPORT A CONCLUSION THAT TESLA KNEW OR SHOULD HAVE KNOWN OF A HUMAN TRAFFICKING SCHEME ........ 6

a. Maslic has no support for his claim that Tesla participated in a venture that it actually knew was engaged in human trafficking. ........ 6

b. Maslic has offered no evidence from which a reasonable jury could conclude that Tesla participated in a venture that it should have known was engaged in human trafficking. ........ 7

c. The CTVPA does not provide an independent, additional basis for liability and Maslic's state law claims fail for the same reasons as his federal claims. ........ 13

V. PLAINTIFF MAKES NO SHOWING THAT SUMMARY JUDGMENT SHOULD BE DENIED UNDER FED. R. CIV. P. 56(d) ........ 13

VI. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
525 F.3d 822 (9th Cir. 2008) ........................................ 13

*Garcia v. Lucent Techs. Inc.*,
51 F. App'x. 703 (9th Cir. 2002) ........................................ 7

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012) ........................................ 2

*Kennedy v. Allied Mut. Ins. Co.*,
952 F.2d 262 (9th Cir. 1991) ........................................ 1

*Kyles v. Baker*,
72 F.Supp.3d 1021 (N.D. Cal. 2014) ........................................ 2

*Lesnik v. Eisenmann SE*,
374 F. Supp. 3d 923 (N.D. Cal. 2019) ........................................ 13

*Loomis v. Cornish*,
836 F.3d 991 (9th Cir. 2016) ........................................ 6

*Pfingston v. Ronan Eng. Co.*,
284 F.3d 999 (9th Cir. 2002) ........................................ 14

*Reddy v. Nuance Communications, Inc.*,
Case No. 5:11-cv-05632-PSG (N.D. Cal. Aug. 5, 2015) ........................................ 6

*United States v. Pallan*,
571 F.2d 497 (9th Cir. 1978) ........................................ 6

*Van Asdale v. International Game Technology*,
577 F.3d 989 (9th Cir. 2009) ........................................ 1, 2

*Yeager v. Bowlin*,
693 F.3d 1076 (9th Cir. 2012) ........................................ 4

**Statutes**

Cal. Penal Code § 236.1 ........................................ 13

Cal. Civil Code § 52.5 ........................................ 5, 13

18 U.S.C. § 1589, *et seq.* ("TVPRA") ........................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 56 ........ *passim*

Fed. R. Evid. 602 ........ 6

Fed. R. Evid. 802 ........ 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

At deposition and in his written responses to Requests for Admission, Plaintiff Sasa Maslic clearly and unambiguously stated that he voluntarily accepted successive assignments with ISM Vuzem, d.o.o. ("Vuzem") to install a paint shop at Defendant Tesla, Inc.'s facility in Fremont, California. Maslic was upset when Vuzem terminated him in 2016 because he expected to take additional assignments from the company that he now accuses of trafficking him. Sensing that his deposition testimony and admissions are fatal to his sole surviving claim for human trafficking, Maslic centers his Memorandum in Opposition ("Opposition," Dkt. No. 135) on a sham declaration that materially and repeatedly contradicts his deposition, while simultaneously littering the docket with thousands of pages of irrelevant material. Maslic cannot explain the absence of coercion in his continued employment with Vuzem by manufacturing evidence. Nor does Maslic articulate any genuine issue of fact that would prevent summary judgment for Tesla on his trafficking claims. He also fails to demonstrate that Tesla materially benefited from a scheme in which it knew or should have known of his alleged trafficking. Lastly, Maslic does not make any showing that summary judgment should be denied under Rule 56(d). For the reasons set forth in Tesla's Motion and herein, the Court should grant summary judgment in Tesla's favor because Maslic was not a victim of human trafficking under any state and federal law.

## II. THE COURT MUST STRIKE PLAINTIFF'S SHAM DECLARATION

Rather than rely on his own deposition testimony, Maslic conjures up a 216-paragraph declaration intended to manufacture genuine issues of fact solely for summary judgment purposes. The Ninth Circuit has held that a party cannot create an issue of fact by submitting an affidavit that contradicts his prior deposition testimony. *Van Asdale v. International Game Technology*, 577 F.3d 989, 998 (9th Cir. 2009). This sham affidavit rule prevents "a party who has been examined at length on deposition" from "rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony," which "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy v. Allied Mut. Ins. Co.*,

952 F.2d 262, 266 (9th Cir. 1991). Likewise, "conclusory, self-serving affidavit[s], lacking detailed facts and any supporting evidence, are insufficient to create a genuine issue of material fact." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012).

To trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Van Asdale*, 577 F.3d at 998-99. "[M]inor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence" are not grounds to exclude an affidavit. *Kyles v. Baker*, 72 F.Supp.3d 1021, 1031 (N.D. Cal. 2014).

Here, Tesla's counsel examined Maslic at length at his deposition, which spanned a total of three days and approximately thirteen hours of translated testimony. Throughout the entirety of the three days, Tesla's counsel asked Plaintiff hundreds of questions on a multitude of topics. Yet Maslic's Declaration is riddled with factual assertions that directly contradict his deposition testimony.

Most critically, Maslic now suddenly declares that he was coerced into continued labor by a string of threats made against him by his Vuzem supervisors. At deposition, Maslic testified that he was threatened *once.* Period. This sole alleged threat did not occur at Tesla, but instead during his first assignment for Vuzem at a BMW factory in Greenville, South Carolina, and after he publicly confronted a supervisor (Klemen Vuzem). (Maslic Dep. at 79:10-20, 85:8-25, 103:16-104:3.)[1] In response to Maslic's request to return to Bosnia due to ethnic discrimination on part of his direct supervisors, Klemen Vuzem laughed and told Maslic that if he left early he would have to repay the company for his travel and visa costs, would lose his U.S. visa, and his reputation would be damaged such that he could not get another job within the European Union. (*Id*. at 108:17-18.) Maslic told Klemen that he would not allow anyone to underestimate or threaten him, nor would he allow anyone to "stomp all over" him. (*Id*. at 108:3-16.) Maslic's complaint was successful – he managed to switch supervisors, the discrimination subsided, and his working

[1] The deposition excerpts cited in this Reply are attached to the Declaration of Ryan W. Goellner, Exhibit 1 hereto, as Exhibit 1-A (Maslic Dep.), 1-B (Gonzales Dep.), and 1-C (Hill Dep.)

conditions improved. (*Id*. at 86:1-4; 104:8-12.). That was the sole threat about which Maslic testified during his lengthy deposition.

Maslic's crafted Declaration paints a different story. (Dkt. No. 135-1, "Maslic Decl.") He now preposterously claims that he continued to work for the Vuzems "because of threats and my fears of retaliation." (Maslic Decl. at ¶ 36.) Despite testifying clearly and unambiguously at deposition that no one besides Klemen Vuzem threatened him (Maslic Dep. at 170:12–171:3, "Q: Who else with the Vuzem company threatened you during your time as an employee? A: Nobody directly, except for this one [Klemen Vuzem at BMW]"), Maslic now states that all his superiors, including company owner Robert Vuzem, repeatedly subjected him to the same threats when he would make a mistake (Maslic Decl. at ¶ 82), if he quit, or did not work (*id*. at ¶ 80). Maslic also relays a hitherto undisclosed story of co-Plaintiff Stjepan Papes receiving the same threats a few months prior to Maslic's arrival in the United States. (*Id*. at ¶¶ 86-87.) Maslic now claims that his circumstances were "scary" and he was "frightened." (*Id*. at ¶¶ 79, 81.)

The contrast with Maslic's deposition testimony could not be starker. Maslic repeatedly testified at deposition (and in response to Requests for Admission) that he *voluntarily* accepted successive assignments with Vuzem at Tesla. (Maslic Dep. at 116:12-15; 176:1-16; Plaintiff's Responses to Tesla's First Set of Requests for Admission, Dkt. No. 127-3, at pp. 26-27.) His motivations were financial, given that Vuzem paid three to four times the prevailing wage in Bosnia and local economic opportunities were limited. (Maslic Dep. at 25:3-13; 46:22-47:1; 112:11-17.) Although Maslic testified that the threats made to him by Klemen Vuzem at BMW were generally known to Vuzem workers, he reaffirmed during the same line of questioning that he unequivocally continued working for Vuzem of his own volition. (*Id*. at 114:15-115:2; 116:12-15.) Maslic likewise uses his Declaration to rewrite the most devastating testimony contrary to this claim, that he was upset following his termination from Vuzem because he wanted to keep working for the company. (*Id*. at 183:5-13.) Maslic now says that he was upset because he wanted Vuzem to pay for his medical care. (Maslic Decl. at ¶¶ 111-13.)

Maslic makes several other material contradictions in his Declaration. He claims that he had a contract to work for Vuzem through 2017, despite testifying at deposition that he never had an employment agreement, and he never produced this phantom contract during discovery. (Maslic Decl. at ¶¶ 32, 106; Maslic Dep. at 48:1-16.) He now avers that he was told to make misrepresentations to a consular officer to receive a U.S. visa but testified under oath that no one prepared him for his visa interview. (Maslic Decl. at ¶¶ 20-21; Maslic Dep. at 67:5-7.) Maslic claimed that he was unable to communicate with anyone at Tesla because none of its employees spoke a Serbo-Croatian language, but now describes in detail a Tesla employee who did. (Maslic Decl. at ¶ 209; Maslic Dep. at 172:22 – 173:5.) A chart identifying many of these diametrically opposed statements is attached hereto as Exhibit 2.

These are not minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence. Maslic is not elaborating upon, explaining, or clarifying prior testimony but rather relying on his declaration to muddy the record with litigation-created facts completely contrary to his own previous deposition. *See Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012). Moreover, Maslic cannot claim his declaration provides or explains new information he either did not remember or did not know, as the Ninth Circuit has held that a district court may find a declaration to be a sham when it contains facts that the affiant previously testified he could not remember. *Yeager*, 693 F.3d at 1080. Maslic's declaration contains nothing more than self-serving contradictory statements intended solely to manufacture issues for summary judgment. Maslic's attempt to twist the facts presented in his deposition testimony into unrecognizable shape should be rejected, not rewarded. Accordingly, the Court should strike Maslic's Declaration under the sham affidavit doctrine.

## III. PLAINTIFF'S HUMAN TRAFFICKING CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT WHERE PLAINTIFF ADMITS THAT HE VOLUNTARILY ACCEPTED SUCCESSIVE ASSIGNMENTS AT TESLA

Setting aside Maslic's sham declaration, Maslic does not seriously contest that his claims fall outside the scope of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589,

*et seq.* ("TVPRA"). Maslic posits two broad propositions of law without any accompanying analysis: that (1) there can be more than one proximate cause of an injury or event and (2) resolution of "these issues" requires a credibility determination by the jury. (Opposition at 17:13-18:1.) Neither applies here.

The TVPRA addresses involuntary labor obtained by means of threats or coercion. It follows that voluntary labor, that which is freely given, necessarily falls outside the TVPRA's scope. At deposition and in his written admissions answers, Maslic confirmed that he voluntarily accepted successive assignments at Tesla because Vuzem paid far better than comparable employment in Bosnia and he needed to provide for his children's education and rebuild from a May 2014 flood. (Maslic Dep. at 116:12-15; 176:1-16; Plaintiff's Responses to Tesla's First Set of Requests for Admissions, Dkt. No. 127-3, at pp. 26-27.) The TVPRA turns on a binary choice – one cannot give his or her labor voluntarily and involuntarily at the same time. Further, Maslic fails to address Tesla's argument that a causal break occurred between the time Maslic voluntarily accepted his first assignment at Tesla in September 2014 and the single threat that he identified at deposition from his time working for BMW in South Carolina in June 2014 after he complained about his working conditions to Klemen Vuzem. (*Id.*, Motion, Dkt. No. 127 at 12:23-13:18.) Accordingly, Maslic's bare, conclusory proposition that there can be more than one proximate cause is immaterial when he has testified that he *voluntary* took multiple successive assignments at Tesla, after the end of the only allegedly threatening condition he experienced while working for Vuzem (which was resolved in his favor to his satisfaction).

Nor does this matter require a jury to weigh Maslic's credibility. There are simply no genuine factual disputes allowing a reasonable jury to find for Maslic because his claims fall outside the TVPRA and, coextensively, the California Trafficking Victims Protection Act ("CTVPA"), Cal. Civil Code § 52.5. Here, his experience features none of the common hallmarks of trafficking (Motion, Dkt. No. 127 at 13:19-14:4) and his own admissions demonstrate that he was not coerced to labor. As such, summary judgment is appropriate on Maslic's sole remaining claims for human trafficking.

## IV. MASLIC DOES NOT OFFER ANY SPECIFIC EVIDENCE TO SUPPORT A CONCLUSION THAT TESLA KNEW OR SHOULD HAVE KNOWN OF A HUMAN TRAFFICKING SCHEME

### a. Maslic has no support for his claim that Tesla participated in a venture that it actually knew was engaged in human trafficking.

Maslic appears to have abandoned and thus waived any claim that Tesla had actual knowledge of alleged human trafficking activities by Vuzem at the Fremont paint shop. *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (holding that failure to "raise . . . arguments before the district court in . . . opposition to summary judgment" are "waived"). Maslic offers a few conclusory assertions about what Tesla supposedly "knew." (Dkt. No. 135 at 10:24-17; 11:13-16; 12:23-25.) But, as usual, none of Maslic's assertions are valid or supported by competent evidence. As a threshold matter, neither Maslic nor his counsel can testify about what another party knew. Fed. R. Evid. 602; *see also Reddy v. Nuance Communications, Inc.*, Case No. 5:11-cv-05632-PSG (N.D. Cal. Aug. 5, 2015) (personal knowledge means "a fact perceived by the senses"); *United States v. Pallan*, 571 F.2d 497, 501 (9th Cir. 1978) ("[W]e doubt that one may meaningfully testify to another individual's . . . substantive knowledge."). So, all of Maslic's (and counsel's) assertions that Tesla "knew" of an alleged fact are not competent evidence. (*See, e.g.*, Dkt. No. 135 at 10:13-14, asserting that "*Tesla* knew" of injuries at the paint shop because "*Maslic* saw some, and heard of others.")

Moreover, the citations Maslic offers in support of these baseless claims provide no actual support for the claims he makes. For instance, on page 11 of his Opposition, Maslic asserts that Tesla knew of injuries at the Fremont site because its supervisors, including Bobby Gonzales, saw them. (Dkt. No. 135 at 11:13-15.) However, Maslic's proffered citation—"Maslic Decl para 298"—does not exist. (Dkt. No. 135-1 at p. 35.) Nor does Maslic ever explain how the alleged, unspecified injuries could prove Tesla had knowledge of human trafficking activities at its plant. The same is true of Maslic's assertion that "Tesla knew that the Vuzems exercised control" over their employees' housing, transportation, visas, and work hours. (Dkt. No. 135 at 12:23-25.)

Besides being unremarkable—control of an employee's work hours is hardly unusual—Maslic's contention is again, at best, thinly supported. The provisions of his Declaration on which he relies simply point to unspecified entrance and exit records Tesla had and Maslic's arrival to the work site every day in a Vuzem-supplied van with other employees, which he does not even assert Tesla personnel witnessed. (*Id.*, citing Dkt. No. 135-1 at ¶¶ 200-201.) None of this demonstrates firsthand knowledge by Tesla, particularly of human trafficking. Maslic's other "evidence" of Tesla's knowledge about his controlled work is simply a few photographs taken by his attorney in 2015 showing an entrance to the Tesla plant. (Dkt. No. 135-3 at 25 and 135-11 at Ex. 310-311.) None of Maslic's proffered assertions indicate trafficking, let alone that Tesla knew of any such trafficking activities.

**b. Maslic has offered no evidence from which a reasonable jury could conclude that Tesla participated in a venture that it should have known was engaged in human trafficking.**

Despite five pages of serial citations to the sprawling declarations filed with his Opposition, Maslic is unable to offer evidence demonstrating that Tesla should have known Maslic was somehow being coerced to work at its paint shop (which, as set forth above, he was not). Initially, Maslic claims to have "substantial documentary and testimonial evidence that Tesla" employees "observed the indicia of coerced labor." (Dkt. No. 135 at 18:24-25.) But the citation following this assertion simply references six different declarations, many of which were offered by declarants in different litigation (some of whom lack first-hand knowledge even in those other cases). This is not enough to defeat summary judgment: "[a] party opposing a motion for summary judgment cannot rest on conclusory allegations, but must set forth *specific facts* showing that there is a genuine issue for trial." *Garcia v. Lucent Techs. Inc.*, 51 F. App'x. 703, 705 (9th Cir. 2002) (emphasis added). Maslic cannot—and indeed makes no effort to—explain how declarations by non-party witnesses in separate litigation that resulted in no adverse judgment against Tesla support his claims here. As such, they are entitled to no consideration in opposing summary judgment here.

The only specific fact that Maslic cites in support of his assertion that Tesla observed "indicia of forced labor" is a recommendation by one employee that Tesla remove Vuzem from its facility due to its safety practices. (Dkt. No. 135 at 19:1, citing Thomas Dep. at 49-50.) But Maslic never explains how Vuzem workplace safety practices and one employee's position that Vuzem should not be allowed to work at the construction site could indicate human trafficking. Maslic offers a false causal relationship, as if every unsafe workplace practice indicates human trafficking. That is not the case. And nothing Robert Thomas testified to during his deposition permits that inference. Maslic has no evidence that any unsafe practices by Vuzem were intentional, let alone any argument that they should have given rise to an inference of labor coercion by Tesla. Maslic returns to this accusation later in his Opposition, asserting that Tesla permitted Vuzem to stay at the site because "they needed the work." (Dkt. No. 135 at 21:12-14.) But he does not explain who "they" is, nor does he provide a citation for that assertion. Even assuming "they" refers to Tesla and Maslic is correct that Tesla permitted Eisenmann (the general contractor) to continue working with Vuzem, nothing about that business decision is indicative of human trafficking, especially with no other evidence from Maslic to prove differently. The inculpatory inference Maslic seeks from the Court concerning Tesla's knowledge requires a leap not justified or allowed by the evidence or Rule 56.

Similarly, Maslic argues that prior allegations in other litigation by completely different plaintiffs in 2015 provided Tesla with "all the relevant facts of coercion by October 2015." (Dkt. No. 135 at 19:23-24, citing Declaration of William C. Dresser ("Dresser Decl.") Ex. 96 and 97, Amended Complaint in *Lesnik v. ISM Vuzem USA, Inc., et al.*, Sup. Ct. No. HG15773484, Sept. 23, 2015.) The problems with Maslic's contentions are obvious and several: unproven allegations by other plaintiffs in different lawsuits involving other defendants that did not result in any adverse finding against Tesla do not create a presumption or even inference of trafficking with respect to Maslic in *this* lawsuit. Even taking the allegations in that wholly separate lawsuit at face value, none of them allege or even mention human trafficking. (*See id.* at Ex. 96.) The causes of action alleged there involved negligence claims (arising from a workplace accident) and labor claims

(like those already dismissed from Maslic's lawsuit). The allegations from that lawsuit, which was filed after Maslic had begun working at Tesla's site (Maslic Dep. at 109:13-21), did not and could not have created an inference of a human trafficking scheme in which Maslic participated.[2]

In support of his unjustified trafficking inferences against Tesla, Maslic also cites his own deposition testimony that "supervisors would go past us every single day and they were able to notice all of these irregularities and they never did anything." (Dkt. No. 135 at 19:8-10, citing Maslic Dep. at 18:13-18.) But again, Maslic offers very few specifics as to what "all these irregularities" were that Tesla employees supposedly should have noticed. He claims only that Tesla supervisors saw Vuzem employees pull heavy items without mechanical assistance (Maslic Dep. at 21:16-24), and that Maslic once cut through old pipes without protective gear (Maslic Dep. at 22:14-20). But he cites just one specific instance in which he claims that Tesla employees observed Maslic without personal protective equipment. (Maslic Dep. at 23:3-7; 171:12-18.) These few instances of difficult or unsafe conditions—only one of which Tesla observed—are insufficient as a matter of law to give rise to an inference of human trafficking of which Tesla should have been aware. Difficult manual labor at an industrial construction site is hardly unexpected. Maslic has offered nothing to explain why this type of labor in the installation of a new automotive paint shop was different from other construction work in such a way that could imply unlawful coercion. And even if a Tesla employee once witnessed Maslic without proper safety gear on, it would not have been reasonable to leap to the conclusion that human trafficking was occurring based on that isolated incident. Rather, as Maslic admits, Tesla enforced the safety

---

[2] Maslic claims the allegations from that prior lawsuit "were corroborated by documents" that Vuzem and Tesla received pursuant to subpoenas. (Dkt. No. 135 at 20:6-7.) However, he provides no evidence of how, when, or by whom the documents were supposedly received. (*See id.*) The documents themselves appear to be medical records of the plaintiff in that prior lawsuit. (Dkt. No. 135-8, Dresser Decl. Ex. 152 and 153.) Even if these were relevant here, their double (and sometimes triple) hearsay prohibits their consideration at summary judgment. Fed. R. Evid. 802; Fed. R. Civ. P. 56(c)(2), (4) (summary judgment evidence must be admissible).

rules against Vuzem, including Maslic. (Maslic Dep. at 23:3-9.)[3] Maslic has no evidence from which Tesla should have deduced he experienced human trafficking by Vuzem.

Maslic also makes the broad and inaccurate assertion that management "from every department" at Tesla "had direct written notice of coercion to obtain the labor of all ISM Vuzem, d.o.o. employees, including Sasa Maslic." (Dkt. No. 135 at 20:8-9.) In support, Maslic alludes to pages 4 and 5 of his "factual" citations, which are supposedly proven by the several depositions of former Tesla employees he took in this case. (*Id.* at 20:12-13.) None of these citations support his claims. First, whether *Eisenmann* supervisors knew of coercion tactics by Vuzem is not alone sufficient to impute knowledge to Tesla. But the testimony and exhibits Maslic cites do not even say that much. (Dkt. No. 135 at 4:28-5:1, citing Wade Hill Dep. at 46, 53-54 and Dresser Decl. Ex. 23.) Wade Hill merely communicated with Eisenmann to find out whom to contact at Vuzem about Gregor Lesnik's condition while he was in the hospital after an accident at the Fremont plant. (Dresser Decl. Ex. 23.) This has nothing to do with Maslic or indicia of human trafficking. The other individuals Maslic names as supposedly having knowledge of coercive labor tactics by Vuzem are equally unsupported (*see* Dkt. No. 135 at 5:1-11):

- Rick Baird, Hill Dep. at 96 and Dresser Decl. Ex. 55 ("And so the end result is … you now are reporting to Rick Baird that the matter had been closed out; is that correct? A. Yes. … Q. And once the matter was closed out you didn't have anything else to do with it; did you? A. Yeah, not that I recall.").
- Yousef Mohamed, Hill Dep. at 62-63 ("Q. …[Y]ou were sending to the people who were on this E-mail list a notice of representation and an application for adjudication of claim. … A. Yes.") and Dresser Decl. Ex. 25 (transmitting a "notice of representation

[3] Maslic also makes the passing assertion that Tesla's motion for summary judgment was based on improper fact contention questions during Maslic's deposition. (Dkt. No. 135 at 19.) But Maslic never identifies any specifically objectionable material on which Tesla's motion relied. Indeed, the material he alludes to features prominently in his own Opposition. (*Id.*) Equally important, after making a series of objections to Tesla's counsel's questions, Maslic's counsel did permit a rephrased question without objection that produced the testimony cited above. (Maslic Dep. at 20-23.)

and application for adjudication of claim regarding ISM Vuzem USA Inc employee Gregor Lesnik").

- Greg Slettvet, Drewery Dep. at 53 ("Q. …Did you have any discussion with him [Slettvet] about anything involving any of the Vuzem employees at any time? A. Not that I remember.").
- Brian Maschler, Gonzales Dep. at 153 ("Q. Do you know who Brian Maschler is? A. I cannot recall who it is.").
- Jonathan Butler, Dresser Decl. Ex. 34 (certificate of insurance not mentioning Jonathan Butler), Ex. 42 (email chain between Butler and Eisenmann regarding negotiations of statement of work for paint shop project).
- Samantha Norberg, Hill Dep. at 108 (identifying Samantha Norberg as the Manager of the EHS Department in 2013-2015).

Nothing in the testimony or communications Maslic cites supports an inference of trafficking.

Maslic's argument on this score concludes with a series of isolated, non-sequitur assertions that do not support his claims. (Dkt. No. 135 at 20-21.) First, Maslic claims Tesla had a right to terminate Vuzem's contract with Eisenmann. (Dkt. No. 135 at 20.) The problem is that Maslic cites the termination provision in Tesla's contract with *Eisenmann* (Dkt. No. 135 at 20, *citing* Dkt. No. 135-7 at Ex. 129), who was the general contractor for the project and who actually hired and controlled the subcontractors, including Vuzem.[4] (Gonzales Dep. at 196:20-197:7; *see also* Dkt. No. 45 at p. 2.) But even if Maslic's assertion were true, any possible contractual right to terminate Vuzem does not somehow indicate that Tesla should have known of alleged labor coercion by Vuzem with respect to Maslic. Even coupled with Maslic's other assertions—such as "permitting" Vuzem to continue work at the site despite safety incidents—the right to terminate Vuzem is not independent evidence that Tesla knew of any potential human trafficking by Vuzem. Maslic also

[4] Maslic's confusion over the structure of the contract at issue persists when he states that Tesla "added work" for Vuzem. (Dkt. No. 135 at 21:20-22.) Correctly stated, Tesla increased Eisenmann's scope of work by issuing additional purchase orders to Eisenmann, and Eisenmann then decided to use Vuzem for the work. (*See* Dresser Decl. Ex. 170-194.)

cites a provision in the Tesla-Eisenmann contract requiring Eisenmann to give Tesla notice of contemplated subcontractors and providing Tesla with a right to audit the records of subcontractors' work for Eisenmann—which is a far cry from a unilateral right to terminate Vuzem. (Dkt. No. 135 at 20-21, citing Dkt. No. 135-7 at p. 14.) But, equally important, Maslic has not submitted any evidence that Tesla should have audited Vuzem's records of work with Eisenmann, or that, even if Tesla had, it would have found anything from which it could conclude Vuzem was engaged in human trafficking. In other words, Maslic has offered (and misinterpreted) barebones contractual provisions without any other evidence that could prove Tesla should have known of any (non-existent) coerced labor scheme.

Second, Maslic points to a report Tesla received from Eisenmann about Vuzem. Maslic asserts that Tesla was ordered to produce that report but has not. (Dkt. No. 135 at 21, citing Dkt. No. 129.) That assertion is not true: the Court's April 23 order (Dkt. No. 129) did not specifically address the production of any report from Eisenmann to Tesla about Vuzem, likely because neither party had raised it in an explanation of outstanding discovery issues prior to Tesla's motion for summary judgment. (*See* Dkt. No. 123.)[5] Regardless, as Will Drewery explained during his deposition, the report was general and benign, and nothing in it would support a concern about coerced labor. Indeed, nothing in the report suggested that Tesla even had any role in hiring Vuzem. (*See* Dkt. No. 135-4, Ex. 15, Drewery Dep. at 28-33 ("Q. . . . Eisenmann would send to you a report that included we're procuring these services, and in one of those reports it would say Vuzem is being hired, correct? A. Yes." "Q. . . . did Tesla have any role in determining whether Vuzem would be an appropriate supplier of services? . . . A. No.").) This isolated and basic "report" by Eisenmann to Tesla about Eisenmann's engagement of Vuzem offered no indicia of human trafficking from which Tesla could have concluded unlawful coercion tactics were occurring.

None of Maslic's disconnected and nebulous evidence provides even the "circumstantial" basis on which he asserts a finding of knowledge can be based. (Dkt. No. 135 at 22, citing *U.S. v.*

[5] In any case, the Court has now concluded that all discovery disputes have been resolved and the time for Maslic to raise any concerns about this report has passed. (Dkt. No. 136.)

*Oswald*, 441 F.2d 44, 47 (9th Cir. 1971)). Because Maslic has offered no evidence—direct or circumstantial—from which a reasonable trier of fact could find that Tesla should have known of any alleged human trafficking scheme by Vuzem with respect to Plaintiff Maslic at Tesla's Fremont facility during 2014-2016, summary judgment in Tesla's favor is proper.

**c. The CTVPA does not provide an independent, additional basis for liability and Maslic's state law claims fail for the same reasons as his federal claims.**

Maslic attempts to except his state law trafficking claim under the CTVPA from summary judgment. (Dkt. No. 135 at 22.) His attempt is futile. He is also wrong that Tesla's motion did not address the CTVPA, despite citing the place where Tesla explained in its motion that the CTVPA does not contain the "knowingly benefitted" language of the TVPRA and thus provides no alternative basis for Maslic to recover here. *See* Cal. Civ. Code, § 52.5; Cal. Penal Code § 236.1; *see also* Dkt. No. 135 at 22. Moreover, the CTVPA has been held by this Court to be coextensive with the TVPRA. *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 954 (N.D. Cal. 2019). Maslic's assertion that California law allows tort liability against employers who hire unlicensed contractors (Dkt. No. 135 at 22:19-20) has no bearing on whether he has produced evidence of human trafficking or Tesla's knowledge thereof at the Fremont paint shop. He has not. Moreover, this Court has held in a related case that Tesla was not a joint employer of the Vuzem workers for purposes of California law. *Lesnik*, 374 F. Supp. 3d at 946. Maslic's claims under the federal TVPRA and state CTVPA fail together and for the same reasons.

## V. PLAINTIFF MAKES NO SHOWING THAT SUMMARY JUDGMENT SHOULD BE DENIED UNDER FED. R. CIV. P. 56(d)

Maslic fails to meet his burden under Rule 56(d) of the Federal Rules of Civil Procedure to the extent he seeks a continuance or denial of Tesla's motion for summary judgment. As the movant on this point, Maslic must show that (1) he has set forth in affidavit form the specific facts he hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan*

*Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Failing to meet this burden results in denial of a Rule 56(d) motion. *Pfingston v. Ronan Eng. Co.*, 284 F.3d 999, 1005 (9th Cir. 2002).

Here, Maslic has wholly failed to meet his burden and instead presents a conclusory and nonsensical argument. Maslic's lead point is that Tesla filed its motion for summary judgment on the last possible day for hearing. (*See* Dresser Decl., Dkt. 135-3, at 3:7-9.) Framed in a slightly different way, Tesla unquestionably timely filed its motion for summary judgment. Maslic objects to Tesla's timely filing by citing an alleged conflict for Maslic's counsel regarding a two-week jury trial that (a) never started and (b) was essentially settled four full days in advance of trial and well before Maslic's Opposition was due. (Dresser Decl. at 32:23-33:7.) Per counsel's own words, Maslic's counsel finalized this alleged conflict at most one day after Tesla filed its motion for summary judgment. (Dresser Decl. at 33:3-7)

Maslic failed to meet his burden because he has not made a showing of specific facts he hopes to elicit that would be essential to oppose summary judgment. The cited evidence in the declaration of Maslic's counsel on this point is severely lacking. Maslic's counsel complains that Tesla made only one Rule 26 Disclosure in this case but does not explain how that has hampered his ability to obtain discovery. (*See* Dresser Decl. at 3:11-19).

Maslic also claims he is lacking facts essential to oppose summary judgment while simultaneously arguing that he has submitted "substantial, overwhelming evidence" that he was the victim of coerced labor and that Tesla violated the TVPRA. (Dkt. No. 135 at 27:14-18.) This is an inherent and illogical contradiction. The parties have litigated all discovery disputes before a magistrate judge, including an in-camera hearing on April 23, 2024. As of May 3, 2024, all discovery disputes have been resolved. (Dkt. No. 136.) Tesla has confirmed that it has produced the documents at issue to the extent they are within Tesla's possession, custody, and control. (*See* Declaration of Aaron M. Bernay, attached hereto as Exhibit 3, at ¶ 5.)

With the exception of a conclusory statement that Maslic has been prevented from presenting facts essential to justify his opposition to Tesla's motion for summary judgment, Maslic offers zero explanation for how the documents he seeks are essential to show that Tesla violated

the TVPRA. (Dresser Decl. at 33:12-15.) Maslic presents his argument by wholly ignoring the reality that any discovery disputes in this matter have already been litigated and resolved. Because Maslic has fallen well short of his burden, the Court should reject Maslic's argument that he has somehow been prevented from presenting facts essential to justify his opposition to Tesla's motion for summary judgment. One cannot simultaneously present "substantial, overwhelming evidence" while also lacking unspecified, allegedly essential evidence. (Dkt. No. 135 at 27:14-18.) All discovery disputes in this case have been resolved, and Tesla has produced the relevant documents in its possession that Maslic requested in discovery or informed Maslic that it has no such documents.

**VI. CONCLUSION**

Because the undisputed evidence shows that the conduct alleged by Plaintiff Sasa Maslic does not fall within the ambit of the Trafficking Victims Protection Reauthorization Act and California Trafficking Victims Protection Act, Tesla respectfully requests that the Court grant summary judgment in its favor as to the sole remaining claim (Count IX) of Plaintiff's First Amended Complaint (Dkt. No. 63).

Dated: May 9, 2024

Respectfully submitted,

By: *_/s/ Aaron M. Bernay_*

TESLA, INC.
Aaron Langberg (SBN 284975)
31353 Huntwood Avenue
Hayward, CA 94544
Telephone: (510) 828-8959
alangberg@tesla.com

Aaron M. Bernay, *pro hac vice*
Ryan W. Goellner, *pro hac vice*
FROST BROWN TODD LLP
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
abernay@fbtlaw.com
rgoellner@fbtlaw.com

*Attorneys for Defendant Tesla, Inc.*

0155814.0780232 4887-0721-3245v3