UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SASA MASLIC, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ISM VUZEM D.O.O., et al.,<br><br>    Defendants. | Case No. 21-cv-02556-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT TESLA, INC.'S MOTION FOR SUMMARY JUDGMENT; AND ADDRESSING RELATED ADMINISTRATIVE MOTIONS**<br><br>[Re: ECF 127, 142, 143] |

This is one of three actions filed by individuals who allege that they were transported to the United States from their home countries of Bosnia and Herzegovina, the Republic of Slovenia, and Croatia to provide cheap labor for American companies in violation of wage and hour laws and human trafficking laws. This lawsuit centers on work Plaintiffs did at Tesla, Inc.'s facility in Fremont, California. Plaintiffs sue the company that employed and transported them, ISM Vuzem d.o.o., and several related entities and individuals (collectively, "Vuzem"); Tesla, Inc. ("Tesla"); and Tesla's general contractor, Eisenmann Corporation ("Eisenmann").

Vuzem and Eisenmann have defaulted. All claims against Tesla have been dismissed with the exception of Claim 9 of the corrected first amended complaint ("CFAC"), a human trafficking claim asserted by Plaintiff Sasa Maslic ("Maslic") only. Claim 9 is set for a jury trial, with the final pretrial conference scheduled for August 1, 2024, and jury selection scheduled for September 13, 2024.

Tesla moves for summary judgment on Claim 9. The motion is GRANTED IN PART AND DENIED IN PART as discussed below. The parties' administrative motions related to the motion for summary judgment also are addressed below.

## I.   BACKGROUND[1]

Maslic is a citizen of Bosnia and Herzegovina. Prior to 2014, he worked as an air conditioning technician in Bosnia. *See* Goellner Decl. Ex. 1-A, Maslic Dep. 53:1-54:1, ECF 127-2. In 2014, there was heavy flooding in Bosnia, and Maslic lost his tools, his car, and most of his home. *See id.* 24:18-21, 53:16-19. Maslic searched for work on the Internet, and applied for a position advertised by Vuzem. *See id.* 42:19-43:12. Vuzem was interested in Maslic's certifications for work on large cooling systems. *See id.* 43:18-44:7. Maslic did not sign a formal agreement with Vuzem,[2] but he was hired and sent on his first assignment to the United States in June 2014, to non-party BMW Industries' facility in Greenville, South Carolina. *See id*. 48:14-21. Vuzem paid for Maslic's travel to the United States as well as his housing and utilities while in Greenville. *See id.* 49:18-24. While at BMW, Maslic worked twelve-hour days on Mondays through Saturdays, and up to eight-hour days on Sundays. *See id*. 73:8-15. Time spent commuting to the work site, and time spent on meal and rest breaks, were not counted toward hours worked. *See id.* 73:20-24.

Shortly after arriving at the BMW facility in Greenville, Maslic began feeling that he was treated differently because of his ethnicity. *See* Maslic Dep. 79:19. Maslic believed that he was given the worst and most difficult job assignments because he "was a Serb from Bosnia Herzegovina." *Id*. 79:24-80:1. He complained to a Vuzem supervisor, Klemen Vuzem ("Klemen"), who responded by laughing at Maslic. *See id.* 79:12-20. Maslic claims that when he asked Klemen for permission to leave the job, Klemen stated that Vuzem would take away Maslic's visa, make Maslic pay for his transportation and housing, and destroy Maslic's reputation so that he could never work in the European Union ("EU") again. *See id.* 85:11-22. Maslic stopped asking to leave, and another Vuzem supervisor named Aljosa Globelnik took Maslic

---

[1] The facts set forth in the Background section, which are drawn largely from Plaintiff Maslic's deposition testimony, are undisputed except where otherwise noted.

[2] Although Maslic testified in his deposition that he did not sign an employment contract, he states in his declaration that he did sign a formal employment contract with Vuzem. *Compare* Maslic Opp. Decl. ¶ 32, 106, 197, *with* Maslic Dep. 48:1-16. As discussed below, the Court grants Tesla's motion to strike certain portions of Maslic's declaration as sham, including the declaration statements that he signed a formal agreement with Vuzem.

1  under his protection. *See id.* 86:1-10.  Maslic worked at the BMW facility in Greenville for
2  eighty-five days and then returned home to Bosnia. *See id.* 106:17-23, 109:18-21.

3        Maslic testified at his deposition that he did not consider resigning from Vuzem after
4  returning home to Bosnia, because he believed that had he done so Vuzem would have made him
5  repay his travel and housing expenses from the BMW job and would have destroyed his reputation
6  to prevent him from working in the EU. *See* Maslic Dep. 112:11-115:2.  Maslic testified that he
7  also continued with Vuzem because there were no jobs in Bosnia as a result of the floods, and he
8  had to support his family and pay for his son's education. *See id.*  In September 2014, Vuzem sent
9  Maslic to work at Tesla's facility in Fremont, California. *See id*. 116:12-15.  Maslic traveled to
10 the United States with a group of workers and supervisors. *See id.* 116:16-117:10.  The living
11 accommodations provided in California were "excellent." *Id*. 117:11-13.  The Vuzem workers
12 lived in houses and had access to a neighborhood health club and swimming pool. *See id.* 119:1-
13 8.  Several of the workers took trips to Los Angeles, California, and Las Vegas, Nevada, but
14 Maslic did not join them because of his finances. *See id.* 135:21-136:2, 136:12-19.  Maslic did
15 take more limited excursions to buy a phone and attend church. *See id.* 135:4-15.

16       The hours at the Tesla facility were similar to those at the BMW facility – ten to twelve
17 hours a day Monday through Saturday, and six to eight hours a day on Sunday. *See* Maslic Dep.
18 132:19-133:5.  Maslic felt that the discrimination he was subjected to at the BMW facility also
19 was present to a lesser degree at the Tesla facility, as he was given the worst and most difficult
20 jobs. *See id.* 131:1-14.  Maslic stated that if there was a job that required three or four workers, he
21 would be assigned to do it himself or with only one other worker. *See id.* 170:19-24.  Maslic
22 claims that his supervisors subjected him to verbal abuse, including telling him "[i]n a very, very
23 ugly way" that Maslic had to make money for Vuzem. *Id*. 170:25-171:9.

24       Maslic also claims that his supervisors forced him to work in unsafe conditions and
25 laughed when he complained that he did not have necessary equipment such as a gas mask, gloves,
26 and protective suit. *See* Maslic Dep. 171:12-18.  According to Maslic, Tesla's safety employees
27 witnessed Maslic working under unsafe conditions. *See id.*  On one occasion, another worker
28 brought a cherry picker basket down on Maslic's head, breaking Maslic's helmet and causing him

to lose consciousness. *See id.* 153:2-22. Maslic was not taken to the hospital. *See id.* 155:5-12. A Vuzem supervisor returned Maslic to his residence, and a Vuzem director brought him pain medication. *See id.* Maslic returned to work a few days later and was given easy jobs for a time. *See id.* 157:8-13. His pain persisted for ten to fifteen days. *See id.* 157:21-23.

Maslic ended up working seven total assignments for Vuzem, all at the Tesla facility with the exception of the first assignment at the BMW facility.[3] *See* Maslic Dep. 100:3-5, 123:22-25. During his last assignment, which lasted from February to May 2016, Maslic began suffering severe pain in his back and hips that became so strong he could not even turn around. *See id.* 173:21-174:24, 176:22-24. Maslic's supervisor took him to a hospital to get a shot. *See id.* 173:21-174:24.

By the time the last Tesla assignment was completed and Maslic returned home to Bosnia, his pain was so severe that he could not walk. *See* Maslic Decl. 177:25-178:3. After seeing doctors and having imaging done, Maslic was told that he had damage to his hips, that he needed a hip replacement, and that he could no longer do physical labor. *See id.* 178:12-181:6, 197:12-17. Vuzem initially placed Maslic on sick leave, but then shortly thereafter Vuzem fired him. *See id.* 181:7-183:4. Maslic had expected that Vuzem would pay for his medical treatment and that he would continue working for Vuzem upon his recovery, but that did not happen. *See id.* 183:1-9. Maslic was able to get a job driving trucks that transport gravel, because the trucks could be operated by pushing buttons. *See id.* 193:2-194:11. However, he had to stop work after two years because he could no longer climb into the trucks. *See id.*

Maslic and other named plaintiffs filed this suit in the Alameda County Superior Court in August 2020, and filed a first amended complaint in October 2020. *See* Not. of Removal at 2-3, ECF 1. Defendants removed the suit to federal district court in April 2021 based on federal question jurisdiction. *See id.* at 3-4. Plaintiffs thereafter filed the operative CFAC in order to

---

[3] Maslic states in his declaration that he also worked in Alabama. *See* Maslic Opp. Decl. ¶ 34. However, he testified at his deposition that he worked in the United States for BMW in South Carolina on his first assignment and thereafter only for Tesla in California. *See* Maslic Dep. 100:3-5, 123:22-25. As discussed below, the Court grants Tesla's motion to strike Maslic's declaration statement that he worked in Alabama as sham.

4

1   correct the spelling of a party's name. *See* CFAC, ECF 63. As relevant to the present motion,
2   Claim 9 of the CFAC alleges that Maslic was the victim of human trafficking in violation of
3   federal and state laws. *See id.* ¶¶ 108-140. While Maslic does not allege that Tesla itself
4   trafficked him, Maslic claims that Tesla knowingly benefitted from Vuzem's trafficking of him
5   and thus is liable under federal and state human trafficking statutes.

## II.   LEGAL STANDARD

A party may obtain summary judgment by showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quotation marks and citation omitted).

## III.   DISCUSSION

Tesla seeks summary judgment on the only remaining claim against it, Claim 9, in which Maslic alleges that he was trafficked in violation of federal and state laws. Specifically, Maslic claims that Vuzem trafficked him in violation of the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589 *et seq.*, and the California Trafficking Victims Protection Act, Cal. Civ. Code § 52.5 ("CTVPA"), and that Tesla is liable under both statutes because Tesla knowingly benefitted from Vuzem's human trafficking scheme.

With respect to the TVPRA claim, Tesla acknowledges that a trafficking victim may bring suit not only against the perpetrator, but also against a beneficiary of the trafficking scheme. *See* 18 U.S.C. § 1595(a); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 935 (D. Or. 2020). However, Tesla contends that it is entitled to summary judgment on the TVPRA claim because Maslic cannot show that Vuzem trafficked him or that Tesla knew or should have known

5

it was benefitting from trafficking, both of which are required to establish liability. With respect to the CTVPA claim, Tesla contends that it is entitled to summary judgment because the state statute imposes liability only on the perpetrator of human trafficking. *See* Cal. Civ. Code § 52.5; Cal. Penal Code § 236.1. Unlike the federal statute, the state statute does not provide for liability against a beneficiary of the trafficking scheme. *See id*.

In opposition, Maslic argues that Tesla is not entitled to summary judgment on the TVPRA claim, because there are factual disputes as to whether he was trafficked by Vuzem and as to whether Tesla knowingly benefitted from a venture it knew or should have known involved human trafficking. Maslic also argues, inaccurately, that Tesla failed to address the CTVPA claim in its motion.

Before turning to the parties' substantive arguments, the Court addresses four procedural issues: (1) Maslic's request that Tesla's summary judgment motion be denied under Federal Rule of Civil Procedure 56(d); (2) Tesla's motion to strike Maslic's declaration submitted with his opposition brief ("Maslic Opposition Declaration") under the sham affidavit rule; (3) Tesla's administrative motion to strike Maslic's declaration submitted with his sur-reply ("Maslic Sur-Reply Declaration"), the declaration of Maslic's counsel, Mr. Dresser, submitted with the sur-reply ("Dresser Sur-Reply Declaration), and untranslated documents attached to the Maslic Opposition Declaration; and (4) Maslic's administrative motion to submit translated copies of documents attached to the Maslic Opposition Declaration. After addressing those issues, the Court discusses the viability of Maslic's CTVPA claim given that the statute does not impose liability on the beneficiary of a trafficking scheme. Finally, the Court takes up the parties' substantive arguments regarding Maslic's TVPRA claim.

**A.     Procedural Issues**

**1.     Maslic's Rule 56(d) Motion**

In the last section of his opposition brief, Maslic asks the Court to deny Tesla's motion under Federal Rule of Civil Procedure 56(d). Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain

6

affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The party seeking relief under Rule 56(d) has the burden to show diligence in seeking discovery and how additional discovery would prevent summary judgment. *See Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

Maslic argues that relief under Rule 56(d) is warranted because of claimed discovery abuses by Tesla. Maslic's counsel submits an affidavit stating that Tesla filed its motion for summary judgment on the last possible day allowed under the case schedule; and that Tesla delayed in producing discovery and failed to comply fully with its discovery obligations. *See* Dresser Decl. ¶¶ 9-23, 41-42, ECF 135-3. Counsel's affidavit does not come close to satisfying the requirements for relief under Rule 56(d). Tesla's motion for summary judgment was timely filed, and Maslic has not cited any authority suggesting that a defendant's decision to file a motion on the last permissible day is abusive. To the extent counsel accuses Tesla of discovery violations, Maslic's recourse was to file an appropriate motion with the assigned magistrate judge. It appears that a number of discovery disputes were litigated before Magistrate Judge van Keulen, and that those disputes have been resolved. *See* Minute Entry, ECF 136. Under those circumstances, the Court finds entirely unpersuasive counsel's assertion that Tesla improperly denied Maslic access to evidence necessary to oppose Tesla's motion.

Maslic's request for relief under Rule 56(d) is DENIED.

### 2. Tesla's Motion to Strike Maslic Opposition Declaration as Sham

Tesla's motion for summary judgment is largely based on Maslic's deposition testimony. Maslic's opposition to the motion is based in part on his Maslic Opposition Declaration, which conflicts with Maslic's deposition testimony in significant respects. *See* Maslic Opp. Decl., ECF 135-1. Tesla moves to strike the Maslic Opposition Declaration under the sham affidavit rule. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009). In support, Tesla submits a chart identifying numerous asserted discrepancies between Maslic's deposition testimony and the Maslic Opposition Declaration. *See* Chart, ECF 137-5. The Court permitted Maslic to file a sur-reply to address Tesla's assertion of the sham affidavit rule. Maslic argues in

his sur-reply that he was truthful in both his deposition and his declaration, and that any discrepancies are attributable to the facts that he was a first-time deponent who was testifying remotely while in pain from various medical conditions, and to translation issues.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Van Asdale*, 577 F.3d at 998 (quotation marks and citation omitted). "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id*. (quotation marks and citation omitted). This rule is subject to two limitations. First, the Ninth Circuit has "made clear that the rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony[.]" *Id*. (quotation marks and citation omitted). "[R]ather, the district court must make a factual determination that the contradiction was actually a 'sham.'" *Id*. (quotation marks and citation omitted). "Second, our cases have emphasized that the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id*. at 998-99. "Thus, the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Id*. at 999 (quotation marks and citation omitted).

After comparing the paragraphs of the Maslic Opposition Declaration identified by Tesla with the corresponding excerpts of Maslic's deposition testimony, the Court finds that certain paragraphs of the Maslic Opposition Declaration are clearly and unambiguously contradicted by Maslic's deposition testimony. For example, in the Maslic Opposition Declaration, Maslic states that he signed a contract with Vuzem, whereas he testified in his deposition that he did not sign a formal contract with Vuzem. *Compare* Maslic Opp. Decl. ¶ 32, 106, 197, *with* Maslic Dep. 48:1-16. In the Maslic Opposition Declaration, Maslic states that he worked in the United States in South Carolina, Alabama, and California, while he testified in his deposition that he worked in the

United States for BMW in South Carolina on his first assignment and thereafter only for Tesla in California. *Compare* Maslic Opp. Decl. ¶ 34, *with* Maslic Dep. 100:3-5, 123:22-25. In the Maslic Opposition Declaration, Maslic states that Tesla misrepresented that working abroad for Vuzem paid three times the average rate of pay in Bosnia, but Maslic testified in his deposition that Vuzem did pay that much more than the average pay in Bosnia. *Compare* Maslic Opp. Decl. ¶ 185 *with* Maslic Dep. 25:3-10, 46:22-47:1. Finally, in the Maslic Opposition Declaration, Maslic states that Tesla hired a safety officer named Alexandra who spoke and understood Macedonian, English and Croatian, but in his deposition Maslic testified that he was unaware of any Tesla employees who spoke Bosnian, Croatian and/or Serbian. *Compare* Maslic Opp. Decl. ¶ 209 *with* Maslic Dep. 172:22-173:5. In the Court's view, those contradictions are so stark that they cannot be explained as mere inconsistencies arising from Maslic's inexperience with deposition proceedings or the fact that he was deposed while suffering from painful medical conditions. Moreover, in light of the representation made by Tesla's counsel that Tesla provided a certified translator at Maslic's deposition, the Court finds unpersuasive Maslic's suggestion that his deposition testimony was inaccurate due to translation issues.

Accordingly, Tesla's motion to strike the Maslic Opposition Declaration is GRANTED IN PART as to those paragraphs of the declaration addressing whether Maslic signed a contract with Vuzem, where he worked in the United States, what Vuzem paid in comparison to the average rate of pay in Bosnia, and whether Tesla had a safety officer who spoke Macedonian, English and Croatian. The Court makes a factual finding that those portions of the Maslic Opposition Declaration are sham.

However, the Court finds that other paragraphs of the Maslic Opposition Declaration identified by Tesla are not clearly contradicted by Maslic's deposition testimony when that testimony is considered in its entirety. For example, Tesla asks the Court to strike Maslic's declaration statements that he continued working for Vuzem because he was afraid that if he left he would be required to repay travel expenses and that his professional reputation would be destroyed, pointing to Maslic's deposition testimony that any direct threats regarding repayment of expenses were made only during the BMW assignment and that Maslic voluntarily took

9

assignments from Vuzem because he needed money to support his family. *Compare* Maslic Opp. Decl. ¶¶ 36, 63, 196-98 *with* Maslic Dep. 112:11-17, 114:15-115:2, 176-1-16. While the deposition testimony highlighted by Tesla does appear inconsistent with Maslic's declaration statements, other deposition testimony given by Maslic is consistent with his declaration statements. Maslic testified that he had a continuing belief, even after returning to Bosnia after the BMW assignment, that if he did not continue working for Vuzem he would be forced to pay back expenses and suffer harm to his reputation. *See* Maslic Dep. 112:11-115:2. He also testified that when he was working at the Tesla site, he was subjected to verbal abuse by his supervisors, including statements made "[i]n a very, very ugly way" that he had to make money for Vuzem. *Id*. 170:25-171:9. Maslic also testified to working under unsafe conditions, and suffering work injuries for which he did not receive medical treatment, which support his assertion that he kept working for Vuzem out of fear. *See* Maslic Dep. 153:2-155:12, 171:12-18. Viewing Maslic's declaration and deposition testimony as a whole, the Court finds that Maslic's declaration statements regarding his fear of retaliation should he stop working for Vuzem explain and clarify his deposition testimony.

Accordingly, Tesla's motion to strike the Maslic Opposition Declaration is DENIED IN PART as to those paragraphs of the declaration addressing his motivation for continuing to take assignments with Vuzem. The Court finds that those portions of the Maslic Opposition Declaration are not sham.

### 3. Tesla's Administrative Motion to Strike (ECF 142)

After Tesla raised its sham affidavit argument in its reply brief, the Court issued an order granting Maslic leave to submit a three-page sur-reply addressing that argument. Maslic submitted not only the permitted sur-reply, but also a new Maslic Sur-Reply Declaration and a new Dresser Sur-Reply Declaration. Tesla has filed an administrative motion to strike the Maslic Sur-Reply Declaration and the Dresser Sur-Reply Declaration. In the Court's view, both of those declarations exceed the scope of the Court's order permitting a sur-reply and present what in essence is additional argument in opposition to summary judgment. The declarations will be stricken on that basis.

Tesla's administrative motion also asks the Court to strike untranslated documents attached to the Maslic Opposition Declaration. Those documents will be stricken, as they cannot be considered by the Court in their current form. *See Heredia v. Americare, Inc.*, No. 17 CIV. 06219 (RWL), 2020 WL 3961618, at *5 (S.D.N.Y. July 13, 2020) (Discussing "well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation.").

Tesla's administrative motion to strike (ECF 142) is GRANTED.

### 4. Maslic's Administrative Motion to Submit Translations (ECF 143)

Maslic has filed an administrative motion to submit translated copies of certain documents that he submitted without translation in opposition to summary judgment. Maslic's administrative motion makes clear, however, that the proposed translations were not prepared by a certified interpreter. The translations appear to have been cobbled together using the Google Translate app, and the efforts of the wife of Maslic's counsel and the fiancé of Maslic's son. Translations done using Google Translate are not admissible in federal court; translation generally must be performed by a certified interpreter. *See Heredia*, 2020 WL 3961618, at *5 (stating requirement for certified English translation); *Novelty Textile, Inc. v. Windsor Fashions, Inc.*, No. CV 12-05602 DDP MANX, 2013 WL 1164065, at *3 (C.D. Cal. Mar. 20, 2013) ("[A] translation by Google Translate is not sufficiently reliable to make it admissible."). Maslic has not submitted any authority for the proposition that translations prepared using an app, or by interested persons who are not certified translators, may be considered by the Court.

Maslic's administrative motion to submit translated copies (ECF 143) is DENIED.

### B. Substantive Issues

Turning to Maslic's substantive claim of human trafficking, the Court first discusses the claim to the extent it is brought under the state trafficking statute, the CTVPA, and then addresses the claim to the extent it is brought under the federal statue, the TVPRA.

### 1. CTVPA

Tesla contends that it is entitled to summary judgment on Claim 9 to the extent it is brought under the CTVPA, because the state statute imposes liability only on the perpetrator of

11

1    human trafficking, and does not impose liability on a beneficiary of a trafficking scheme such as
2    Tesla is alleged to be in this action.  *See* Cal. Civ. Code § 52.5; Cal. Penal Code § 236.1.  Tesla's
3    argument is well-taken.  The text of the state statutory provisions does not provide for liability
4    against a beneficiary of a trafficking scheme, rather than a perpetrator.  *See id*.  Maslic does not
5    argue or offer any authority to the contrary.  He makes only the inaccurate argument that Tesla
6    failed to address the CTVPA in its motion for summary judgment.
7        Accordingly, Tesla's motion for summary judgment on Claim 9 is GRANTED IN PART
8    to the extent that claim is based on the CTVPA.

### 2. TVPRA

10       A more difficult question is presented by Tesla's motion for summary judgment on Claim
11   9 to the extent that claim is based on the TVPRA.  As noted above, the TVPRA does provide for
12   liability against a beneficiary of human trafficking.  Specifically, a trafficking victim "may bring a
13   civil action against the perpetrator (*or whoever knowingly benefits*, or attempts or conspires to
14   benefit, financially or by receiving anything of value *from participation in a venture which that*
15   *person knew or should have known* has engaged in an act in violation of this chapter) in an
16   appropriate district court of the United States and may recover damages and reasonable attorneys
17   fees." 18 U.S.C. § 1595(a) (emphasis added).  To recover against Tesla under a financial
18   beneficiary theory, Maslic must prove that Tesla (1) knowingly benefited financially or by
19   receiving anything of value from (2) participation in a venture Tesla knew or should have known
20   was engaged in human trafficking.  *See A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d
21   at 935.  Tesla argues that Maslic cannot prove either that he was trafficked by Vuzem, or that
22   Tesla knew or should have known Vuzem was engaged in trafficking.

### a. Whether Maslic was Trafficked by Vuzem

24       Tesla first argues that Maslic cannot establish liability against it under a beneficiary theory,
25   because Maslic cannot establish that he was trafficked.  The TVPRA prohibits obtaining labor or
26   services by one or more of four specified means:  (1) "by means of force, threats of force, physical
27   restraint, or threats of physical restraint to that person or another person"; (2) "by means of serious
28   harm or threats of serious harm to that person or another person"; (3) "by means of the abuse or

12

1    threatened abuse of law or legal process"; or (4) "by means of any scheme, plan, or pattern
2    intended to cause the person to believe that, if that person did not perform such labor or services,
3    that person or another person would suffer serious harm or physical restraint." 18 U.S.C. §
4    1589(a). As the party moving for summary judgment, Tesla has the initial burden to prove that
5    Maslic cannot establish that Vuzem obtained his labor by one of these means.

6    To meet its initial burden, Tesla submits Maslic's deposition testimony that he voluntarily
7    and repeatedly took assignments from Vuzem for financial reasons. In particular, Tesla points to
8    Maslic's testimony that he could not find work in Bosnia, he could earn good money with Vuzem,
9    and he needed to provide for his family. *See* Maslic Dep. 25:3-13, 46:22-47:1, 60:10-61:10,
10   114:23-115:2. Tesla also points to Maslic's deposition testimony that Vuzem employees were
11   free to leave their housing to travel in their free time, and that Maslic was in control of his passport
12   and cell phone. *See id*. 101:9-11, 135:21-136:19, 141:15-142:1. Tesla argues that the
13   circumstances illustrated by Maslic's own testimony distinguish this case from others in which
14   human trafficking was found to have occurred. *See, e.g., Lagasan v. Al-Ghasel*, 92 F. Supp. 3d
15   445, 450 (E.D. Va. 2015) (finding a TVPRA violation where plaintiff's employer confiscated her
16   passport, confined her to residence, made her work long hours for little pay, and prevented her
17   from speaking to others). Tesla argues that this case is more like *Headley v. Church of
18   Scientology Int'l*, 687 F.3d 1173, 1179-80 (9th Cir. 2012), in which the Ninth Circuit found that
19   the plaintiffs voluntarily worked for the defendant's organization because they thought it was the
20   right thing to do, and that the potential consequences of leaving – ostracism and loss of contact
21   with family and friends – were not sufficiently serious to satisfy the requirements of 18 U.S.C. §
22   1589(a). The Court finds Tesla's evidence sufficient to meet its initial burden of showing that
23   Maslic was not trafficked by Vuzem. The burden thus shifts to Maslic to present evidence from
24   which a jury could find that he was trafficked.

25   Maslic submits his deposition testimony and declaration statements that he continued to
26   work for Vuzem because he was afraid that if he left, he would be required to repay prior travel
27   expenses and that his professional reputation would be destroyed such that he would not be able to
28   find other work. *See* Maslic Dep. 112:11-115:2; Maslic Opp. Decl. ¶¶ 36, 63, 196-98. Maslic's

United States District Court
Northern District of California

13

assertion that Vuzem caused him to keep working through financial pressure also is supported by his testimony that when he was working at the Tesla site, he was subjected to verbal abuse by his supervisors, including statements made "[i]n a very, very ugly way" that he had to make money for Vuzem. *Id.* 170:25-171:9. Maslic also testified to working under unsafe conditions, and suffering work injuries for which he did not receive medical treatment. *See* Maslic Dep. 153:2-155:12, 171:12-18.

This evidence, viewed in the light most favorable to Maslic, supports a reasonable inference that Maslic kept returning to the Tesla site because of financial pressure brought to bear by Vuzem, including threats to destroy his reputation and prevent him from obtaining other work. "It is well-settled that financial pressure, including the threat of financial harm, may constitute serious harm" for purposes of establishing human trafficking under the TVPRA. *Estavilla v. Goodman Grp., LLC*, No. CV 21-68-M-KLD, 2022 WL 539192, at *13 (D. Mont. Feb. 23, 2022) (quotation marks and citation omitted); *see also Paguirigan v. Prompt Nursing Emp. Agency LLC*, No. 17-CV-1302 (NG) (JO), 2018 WL 4347799, at *8 (E.D.N.Y. Sept. 12, 2018) ("The threat of financial harm constitutes serious harm within the meaning of the TVPA.").

### b. Whether Tesla Knew or Should Have Known

Tesla next argues that even if Maslic was trafficked by Vuzem, Maslic cannot prove liability against Tesla under a beneficiary theory. As stated above, in order to prevail on that theory at trial, Maslic must prove that Tesla (1) knowingly benefited financially or by receiving anything of value from (2) participation in a venture Tesla knew or should have known was engaged in human trafficking. *See A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d at 935. Tesla concedes that Tesla obtained a benefit from Vuzem in the form of labor at its Fremont, California facility. However, Tesla contends that Maslic cannot prove that Tesla knew or should have known that Vuzem was engaged in human trafficking.

As the party seeking summary judgment, Tesla has the initial burden to show that Maslic cannot prove that Tesla knew or should have known Vuzem was engaged in trafficking. Tesla asserts that the record is devoid of any evidence showing that Tesla personnel were made aware of facts indicating that Vuzem's employees were trafficked. Specifically, Tesla points out that

14

1  Maslic did not testify that he told any Tesla personnel that he had been threatened or subjected to
2  abusive treatment by Vuzem personnel.  Tesla also notes that Maslic did not testify that Tesla
3  personnel witnessed him working under unsafe conditions except perhaps on sporadic occasions.
4  Tesla has met its initial burden on summary judgment by pointing to the absence of record
5  evidence regarding its actual or constructive knowledge of human trafficking.  *See In re Oracle*
6  *Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  The burden thus shifts to Maslic to present
7  evidence from which a reasonable jury could find that Tesla knew or should have known that
8  Vuzem was engaged in human trafficking.

9  Maslic points to his deposition testimony that Tesla safety employees witnessed Maslic
10 working under unsafe conditions on at least one occasion, when Maslic did not have necessary
11 equipment such as a gas mask, gloves, and protective suit.  *See* Maslic Dep. 171:12-18.
12 According to Maslic, Tesla supervisors witnessed Vuzem employees working "every single day"
13 and thus would have been able to observe the unsafe work conditions under which they all
14 worked.  *See id*. 18:13-18.  Maslic testified to a significant accident in which he was struck in the
15 head by a piece of equipment, causing him to lose consciousness, but was not taken to the hospital
16 and was returned to work within a few days.  *See id.* 153:2-22, 155:5-12.  While Maslic does not
17 provide evidence that Tesla was aware of that incident, a reasonable inference could be drawn that
18 Tesla safety personnel were aware of serious injuries at the Tesla site.

19 Maslic also makes reference to a jumble of other evidence that is not cited with sufficient
20 particularity for the Court to locate it.  For example, Maslic asserts that "Plaintiff has submitted
21 substantial documentary and testimonial evidence that Tesla's supervisors and management
22 observed the indicia of coerced labor, Maslic Decl,; Papes Decl; Papes Supplemental Decl; Lesnik
23 Decl; Travancic Decl; Palmer Decl."  Pl.'s Opp. at 18, ECF 135.  No ECF numbers are given to
24 aid the Court in locating the referenced declarations, and no pin citations to the relevant
25 paragraphs of those declarations are provided.  Maslic asserts that "Tesla's safety management
26 recommended that Vuzem be removed from the job site," citing to the "Thomas depo" beginning
27 on page 43.  *See id*. at 18-19.  The Court located excerpts of the deposition of Emerson Thomas as
28 Exhibit 14 to the Dresser Declaration, but page 43 is not included in that exhibit.  *See* Dresser

15

Opp. Decl. Ex. 14, ECF 135-4.  In short, although it appears that the record may contain additional evidence to support Maslic's claim against Tesla, the evidence has not been cited to the Court in a useful form.

Given the slapdash manner in which Maslic has opposed Tesla's motion, the Court is left with a record that largely favors Tesla, but which does contain some evidence supporting Maslic's assertion that Tesla knew or should have known Vuzem was engaged in human trafficking.  While Maslic's evidence is not robust, the Court finds that if it is viewed in the light most favorable to Maslic, it gives rise to a reasonable inference that Tesla knew or should have known that human trafficking was being perpetrated at its Fremont facility.  The Court further concludes that Tesla's knowledge, or constructive knowledge, of Vuzem's alleged human trafficking scheme is a question of fact for the jury to decide.

Accordingly, Tesla's motion for summary judgment on Claim 9 GRANTED IN PART to the extent the claim is based on the CTVPA and DENIED IN PART to the extent the claim is based on the TVPRA.

### IV. ORDER

(1) Tesla's motion for summary judgment on Claim 9 (ECF 127) is GRANTED IN PART to the extent the claim is based on the CTVPA and DENIED IN PART to the extent the claim is based on the TVPRA.

(2) Maslic's motion for relief under Federal Rule of Civil Procedure 56(d) is DENIED.

(3) Tesla's motion to strike the Maslic Opposition Declaration as sham is GRANTED IN PART and DENIED IN PART as set forth herein.

(4) Tesla's administrative motion to strike (ECF 142) is GRANTED.

(5) Maslic's administrative motion to submit translated copies (ECF 143) is DENIED.

(6) This order terminates ECF 127, 142, and 143.

Dated: July 11, 2024

_____
BETH LABSON FREEMAN
United States District Judge