**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SAŠA MASLIC, individually and on behalf of a certified class; IVAN DRZAIC; ROBERT HERNAUS; LEOPOLD HUBEK; LEON HUDOLDETNJAK; ELVIS KOSCAK; TOMICA PANIC; STJEPAN PAPES; ŽELJKO PULJKO; DARKO ŠINCEK; DAVID ŠTANTE; NEDELJKO ŽIVANIC; GOGO REBIC; and MITJA POGOREVC, <br><br> Plaintiffs, <br><br> v. <br><br> ISM VUZEM D.O.O.; ISM VUZEM USA, INC.; VUZEM USA, INC.; HRID-MONT D.O.O.; IVAN VUZEM; ROBERT VUZEM; EISENMANN CORPORATION; and TESLA, INC., <br><br> Defendants. | Case No.  21-cv-02556-BLF <br><br> **ORDER GRANTING  MOTION FOR DEFAULT JUDGMENT; AND SETTING DEADLINE TO FILE A MOTION FOR ATTORNEYS' FEES** <br><br> [Re:  ECF 197] |

This suit is brought by fourteen Plaintiffs and a now-certified class of individuals who claim that they were transported to the United States from their home countries of Bosnia and Herzegovina, the Republic of Slovenia, and Croatia to provide cheap labor for American companies in violation of federal and state wage and hour laws, and federal and state human trafficking laws.  The operative corrected first amended complaint ("FAC") asserts claims against four Slovenian entities and individuals who employed the plaintiffs and contracted their labor to American companies:  Defendants ISM Vuzem d.o.o., HRID-MONT d.o.o., Ivan Vuzem, and Robert Vuzem (collectively, "Vuzem Defendants").  *See generally* FAC, ECF 63.  The FAC also asserts claims against Defendants Tesla, Inc. ("Tesla") and its general contractor, Eisenmann Corporation ("Eisenmann"), based on labor that Plaintiffs allegedly performed at Tesla's facility in Fremont, California.  *See generally id*.

United States District Court
Northern District of California

1    Tesla and two other Vuzem-related companies, ISM Vuzem USA, Inc. and Vuzem USA,

2    Inc., have been dismissed from the case.  *See* Order, ECF 94; Notice, ECF 183.

3    Thirteen Plaintiffs and the certified class have filed a motion for default judgment against

4    the Vuzem Defendants and Eisenmann.  The fourteenth Plaintiff, Gogo Rebic ("Rebic"), did not

5    file a motion for default judgment.  The Court has issued an Order to Show Cause why Rebic's

6    claims should not be dismissed.  *See* OSC, ECF 200.

7    The motion for default judgment is brought on behalf of Plaintiffs Saša Maslic,

8    individually and as class representative, Ivan Drzaic, Robert Hernaus, Leopold Hubek, Leon

9    Hudoldetnjak, Elvis Koscak, Tomica Panic, Stjepan Papes, Željko Puljko, Darko Šincek, David

10   Štante, Nedeljko Živanic, and Mitja Pogorevc ("Moving Parties").  The motion was noticed for

11   hearing on July 10, 2025, but the Court found it to be suitable for decision without oral argument

12   and vacated the hearing.  *See* Order, ECF 198.

13   For the reasons discussed below, the motion for default judgment is GRANTED and

14   Moving Parties are directed to file any motion for attorneys' fees by August 15, 2025.

15   **I.       BACKGROUND**

16   Plaintiffs filed this suit in the Alameda County Superior Court in August 2020.  *See* Not. of

17   Removal at 2-3, ECF 1.  Tesla and Eisenmann removed the suit to federal district court in April

18   2021, asserting the existence of federal jurisdiction based on federal statutory claims and the Class

19   Action Fairness Act, 28 U.S.C. § 1453.  *See id.* at 3-4.  The case was assigned to Judge Lucy H.

20   Koh, who severed and remanded one claim to the state court, and also dismissed all wage and hour

21   claims against Tesla and Eisenmann.  *See* Orders, ECF 42, 45.  The case thereafter was reassigned

22   to the undersigned judge.  *See* Order, ECF 51.

23   The operative FAC alleges that Plaintiffs are residents of Bosnia and Herzegovina, the

24   Republic of Slovenia, and Croatia.  *See* FAC ¶ 1.  The Vuzem Defendants allegedly hired

25   Plaintiffs to provide labor to American companies in the United States.  *See id.* ¶¶ 16-17.  A

26   substantial portion of that labor allegedly was performed at Tesla's facility in Fremont, California,

27   but some labor allegedly was performed in other states including South Carolina, Alabama,

28   Tennessee, and Michigan.  *See id.* ¶¶ 17, 26.  Plaintiffs allege that they worked in excess of eight

United States District Court
Northern District of California

2

United States District Court
Northern District of California

hours Monday through Saturday and often worked on Sunday. *See id*. ¶¶ 52-53. They allege that they were paid a flat monthly rate, did not receive minimum or overtime wages, and were not given rest breaks or wage statements. *See id*. ¶¶ 26, 38, 54-57, 61, 65, 70, 81-83.

The FAC asserts claims for: (1) minimum wages under the Fair Labor Standards Act ("FLSA"); (2) overtime wages under the FLSA; (3) minimum wages under California law; (4) overtime wages under California law; (5) failure to provide meal breaks and rest periods under California law; (6) failure to provide accurate wage statements under California law; (7) failure to pay waiting time penalties under California law; (8) a class claim for violation of California wage and hour laws; and (9) trafficking and coerced labor under the federal Trafficking Victims Protection Reauthorization Act ("TVPRA") and the California Trafficking Victims Protection Act ("CTVPA").[1]

All remaining defendants – the Vuzem Defendants and Eisenmann – have defaulted. *See* Clerk's Notices, ECF 68, 125. Moving Parties seek default judgment against the Vuzem Defendants on all claims, and against Eisenmann on the only claim remaining against it, Claim 9.

## II.    LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action, who is neither a minor nor an incompetent person, and against whom a judgment for affirmative relief is sought. *See* Fed. R. Civ. P. 55(a). After entry of default, a court may enter default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

In deciding whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering these factors, all factual allegations in the plaintiff's complaint are taken as

---

[1] Claim 10 for damages under California Labor Code § 3706 was remanded to state court by Judge Koh. *See* Order, ECF 42.

1  true, except those related to damages.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-

2  18 (9th Cir. 1987).  When the damages claimed are not readily ascertainable from the pleadings

3  and the record, the court may either conduct an evidentiary hearing or proceed on documentary

4  evidence submitted by the plaintiff.  *See Johnson v. Garlic Farm Truck Ctr. LLC*, 2021 WL

5  2457154, at *2 (N.D. Cal. Jun. 16, 2021).

## III.    DISCUSSION

"When entry of judgment is sought against a party who has failed to plead or otherwise

defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

matter and parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  The Court discusses in turn

jurisdiction, service of process, the *Eitel* factors, and the requested relief.

### A.    Jurisdiction

#### 1.    Subject Matter Jurisdiction

##### a.    Wage and Hour Claims

The Court has federal question jurisdiction over Claims 1 and 2 for violations of the FLSA,

because those claims are brought under a federal statute.  *See* 28 U.S.C. § 1331 ("The district

courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

treaties of the United States.").  The Court has supplemental jurisdiction over Claims 3-8, which

are wage and hour claims asserted under state law, as those claims arise out of the same course of

conduct that form the basis of the FLSA claims.  *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of

which the district courts have original jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution.").

##### b.    Human Trafficking Claims

The Court has federal question jurisdiction over Claim 9 for human trafficking to the

extent that claim is brought under the federal trafficking statute, the TVPRA.  The Court has

supplemental jurisdiction over Claim 9 to the extent it is brought under the state statute, the

CTVPA, as the state trafficking claim arises from the same facts as the federal trafficking claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2.    Personal Jurisdiction

#### a.    Vuzem Defendants

The Court has specific personal jurisdiction over the Vuzem Defendants based on factual allegations which, when accepted as true, establish that:  the Vuzem Defendants purposefully directed their activities to California and availed themselves of the privilege of conducting business in California; the claims of the FAC arise out of those forum-related activities; and exercise of jurisdiction over the Vuzem Defendants is reasonable.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (setting forth requirements for specific personal jurisdiction).  The FAC alleges among other things that ISM Vuzem d.o.o. entered into contracts with Eisenmann and Tesla in California for the plaintiffs' labor services at Tesla's facility in Fremont, California.  *See* FAC Compl. ¶ 16.  The FAC also alleges that Robert and Ivan Vuzem own and control the operations of ISM Vuzem d.o.o.  *See id*. ¶¶ 8-9. Robert and Ivan Vuzem allegedly traveled to the worksite at the Tesla facility in Fremont, California and corresponded with the plaintiffs regarding their wages.  *See id*. ¶¶ 15, 23.

In addition, the FAC alleges that "between Ivan Vuzem and Robert Vuzem and each of ISM Vuzem d.o.o. . . . . and HRID-MONT d.o.o. there is such a unity of interest and ownership between the entities and their equitable owners that the separate personalities of the entities and the owners do not in reality exist."  FAC ¶ 9.  Personal jurisdiction over a corporation may be established by showing that the corporation is the alter ego of other entities or individuals as to whom personal jurisdiction exists.  *See Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (applying California law).  The test is whether (1) there is such unity of interest and ownership that the separate personalities of the corporations no longer exist and (2) failure to disregard the corporations' separate identities would result in fraud or injustice.  *See id*.  Under this test, ISM Vuzem d.o.o.'s California contacts may be attributed to HRID-MONT d.o.o.

Based on these alleged facts, the Court finds that the Vuzem Defendants' contacts with California are sufficient to satisfy the requirements for specific personal jurisdiction under the *Schwarzenegger* test discussed above.  *See Schwarzenegger*, 374 F.3d at 802.

### b. Eisenmann

Eisenmann is alleged to be a Delaware corporation with its principal place of business in Illinois. *See* FAC ¶ 11. The Court has specific personal jurisdiction over Eisenmann based on factual allegations which, when accepted as true, establish that Eisenmann was a party to the contracts signed in California for Plaintiff's labor in California. *See* FAC ¶¶ 16-18. Plaintiff's labor was provided at Tesla's Fremont facility over the course of two years, from November 2014 to June 2016. *See id.* ¶ 17. All defendants, including Eisenmann, are alleged to have conducted continuous business in California from which the present claims arise. *See id.* ¶¶ 19-21. Those allegations are sufficient to satisfy the requirements for personal jurisdiction under the *Schwarzenegger* test. *See Schwarzenegger*, 374 F.3d at 802.

## B. Service of Process

When a plaintiff requests default judgment, the court must assess whether the defendant was properly served with notice of the action. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982); *Solis v. Cardiografix*, No. 12-cv-01485, 2012 WL 3638548, at *2 (N.D. Cal. Aug. 22, 2012).

### 1. Vuzem Defendants

The Court has reviewed the proofs of service with respect to the Vuzem Defendants. *See* POS, ECF 55, 56 (ISM Vuzem, d.o.o.); ECF 59, 60 (Robert Vuzem); ECF 57, 58 (Ivan Vuzem); ECF 53-54 (HRID-Mont, d.o.o.). It appears that service was compliant with Federal Rules of Civil Procedure 4, which permits service on individuals and companies in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1), (h)(2). The proofs of service represent that the Vuzem Defendants were served pursuant to the Hague Convention and by other means. The Court therefore finds that the Vuzem Defendants were properly served with notice of this action. The Clerk entered default against the Vuzem Defendants on March 30, 2022. *See* Clerk's Notice, ECF 68.

### 2.    Eisenmann

Eisenmann appeared in and litigated this action.  However, its answer was stricken when its counsel withdraw and Eisenmann failed to appear through new counsel.  *See* Order, ECF 124. The clerk entered default against Eisenmann on April 9, 2024.  *See* Clerk's Notice, ECF 125.

### C.    Eitel Factors

Next, the Court considers whether default judgment is warranted under the *Eitel* factors. All thirteen Moving Parties seek default judgment against the Vuzem Defendants on Claims 1-7 for wage and hour violations.  Saša Maslic seeks default judgment against the Vuzem Defendants on Claim 8 for wage and hour violations on behalf of the certified class.  Finally, Saša Maslic seeks default judgment against the Vuzem Defendants and Eisenmann on Claim 9 for human trafficking.

### 1.    Factor 1 – Possibility of Prejudice

Under the first *Eitel* factor, the Court finds that Moving Parties would be prejudiced if the Court were to deny their motion for default judgment.  Unless default judgment is entered, Moving Parties will have no other means of recourse on their claims.  *See Ridola v. Chao*, 2018 WL 2287668, at *5 (N.D. Cal. May 18, 2018) (plaintiff prejudiced without default judgment because she "would have no other means of recourse against Defendants for the damages caused by their conduct").

The first factor therefore weighs in favor of granting default judgment.

### 2.    Factors 2 and 3 – Merits and Sufficiency of Claims

The second and third *Eitel* factors address the merits and sufficiency of Moving Parties' claims.  Courts often analyze these two factors together.  *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together.").  "[T]he general rule is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

### a.    Claims 1 and 2 – Unpaid Wages under FLSA

Moving Parties seek default judgment against the Vuzem Defendants on Claims 1 and 2

1    for unpaid wages under the FLSA.  Those claims are brought by Moving Parties individually.  No

2    collective action under the FLSA has been asserted.

3        Claim 1 alleges failure to pay minimum wages under the FLSA, 29 U.S.C. § 206(a), which

4    provides for a minimum wage of $7.25 per hour for the time period in question.  Claim 2 alleges

5    failure to pay overtime wages under the FLSA, 29 U.S.C. § 207(a), which provides for overtime

6    wages of not less than time and a half for hours worked in excess of 40 hours in a workweek.  "To

7    establish a minimum-wage or overtime violation of the FLSA, Plaintiff must establish three

8    elements:  (1) she was an employee of Defendants, (2) she was covered under the FLSA, and

9    (3) Defendants failed to pay her minimum wage or overtime wages."  *Smith v. Nov. Bar N Grill*

10   *LLC*, 441 F. Supp. 3d 830, 834 (D. Ariz. 2020).

### i.    First Element of FLSA Claims

12       As to the first element, that the plaintiff was an employee of the defendant, the Ninth

13   Circuit has held that "the definition of 'employer' under the FLSA is not limited by the common

14   law concept of 'employer,' but is to be given an expansive interpretation in order to effectuate the

15   FLSA's broad remedial purposes."  *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999)

16   (internal quotation marks and citation omitted).  For example, "[w]here an individual exercises

17   control over the nature and structure of the employment relationship, or economic control over the

18   relationship, that individual is an employer within the meaning of the Act, and is subject to

19   liability."  *Id*. at 1012 (internal quotation marks and citation omitted).  Thus, in *Lambert*, the Ninth

20   Circuit held that the chief executive officer and the chief operating officer of the defendant

21   corporations' corporate parent were "employers" who could be held liable under FLSA.  *See id*.

22       Here, the FAC alleges that each of the Vuzem Defendants was an employer of Moving

23   Parties within the meaning of the FLSA.  *See* FAC ¶¶ 9, 16, 33.  Moving Parties allegedly were

24   employed by ISM Vuzem, d.o.o., *see id*. ¶ 16, Robert and Ivan Vuzem allegedly exercised control

25   over the employment relationship, *see id*. ¶ 33, and all Vuzem Defendants, including HRID-Mont

26   d.o.o., allegedly were alter egos of each other, *see id*. ¶ 9.  The Court finds the FAC's allegations,

27   taken as true, to be sufficient to establish the first element of the FLSA claims.

28

United States District Court
Northern District of California

ii.      **Second Element of FLSA Claims**

As to the second element, that the plaintiff was covered under the FLSA, an individual is covered under the FLSA if the individual "works for an enterprise engaged in commerce." *Smith*, 441 F. Supp. 3d at 841. The FAC alleges that the Vuzem Defendants were engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA. *See* FAC ¶ 29. The Court finds this allegation sufficient to satisfy the second element of the FLSA claims.

iv.      **Third Element of FLSA Claims**

As to the third element, that the defendant failed to pay the plaintiff minimum or overtime wages, the FAC alleges that: "Plaintiffs and each of them routinely worked in excess of forty (40) hours in a workweek without receiving either minimum wages or overtime compensation for services and labor provided in the United States," FAC ¶ 26; "Defendant ISM Vuzem, d.o.o. willfully engaged in a pattern of violating the FLSA by knowingly failing to pay its Full Time Employees, including Plaintiffs, minimum wages," *id*. ¶ 31; and "Defendant ISM Vuzem, d.o.o. suffered and permitted Plaintiffs to routinely work more than forty (40) hours a workweek while paying them less than minimum wages and without overtime compensation," *id*. ¶ 38.

Plaintiffs also submit evidence showing that they were not paid minimum and overtime wages to which they were entitled. In order to establish a failure to pay minimum wages in violation of the FLSA, the employee must show that in a given work week, the total amount paid divided by the hours worked falls below the minimum wage set by the statute. *See Durland v. Straub*, No. 3:20-CV-00031-IM, 2022 WL 2704169, at *5 (D. Or. July 12, 2022). In order to establish a failure to pay overtime wages, the employee must show that in a given work week, the employee worked more than forty hours and was not paid time and a half for all hours in excess of forty. *See id*. at *6.

Those necessary specifics are supplied by the declaration of Moving Parties' counsel, Mr. Dresser, and documents attached thereto. *See* Dresser Decl., ECF 195-5. Counsel provides wage spreadsheets for each of the Moving Parties, broken down by work week, showing: regular hours worked up to 40 hours per week; overtime hours worked in excess of 40 hours per week; regular

United States District Court
Northern District of California

wages that should have been paid for the first 40 hours per week using the FLSA minimum base pay rate of $7.25 per hour; overtime wages that should have been paid for hours worked in excess of 40 hours per week; flat rate wages actually paid, and the amount of underpaid wages.  *See* Dresser Decl. ¶¶ 66-71, 256; Tables A-1 through A-13, ECF 202.  The meaning of those spreadsheets is explained by counsel's declaration, and counsel also provides a table of the total amount of unpaid wages sought by each of the Moving Parties under the FLSA.  *See* Dresser Decl. ¶¶ 66-71, 256; Table G, ECF 204.  To avoid duplicate damages, the amounts sought for unpaid minimum and overtime wages under the FLSA exclude the amounts sought for unpaid minimum and overtime wages under California law.  *See id.*

The Court notes that the wages claimed by Moving Parties under the FLSA include travel time between their assigned housing and their work sites.  Under federal law, "[t]ime spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked."  29 C.F.R. § 785.38.  "Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice."  *Id.*  Moving Parties submit declarations stating that they were transported between assigned housing to construction sites by vans; they received work assignments and instructions in the vans; Moving Parties carried tools in the vans; and travel in the vans was required.  This Court previously found in the related *Novoselac* action that similar evidence was sufficient to establish that travel time in the vans was compensable under the FLSA.  *Novoselac v. Vuzem*, No. 21-CV-08654-BLF, 2023 WL 3899011, at *8 (N.D. Cal. June 7, 2023).  This Court likewise finds that Moving Parties in the present case have made the requisite showing that their travel time qualifies as compensable as hours worked under the FLSA.

Moving Parties request an award of liquidated damages under the FLSA.  Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as

liquidated damages." 29 U.S.C.A. § 216(b).  For Claims 1 and 2 brought under the FLSA, Moving Parties properly seek liquidated damages equal to the total recoverable unpaid minimum and overtime wages.  *See* Dresser Decl. ¶ 67; Table G.

Other district courts in the Ninth Circuit have accepted attorney declarations summarizing underlying wage data as adequate bases for granting default judgment in wage and hour cases. *See, e.g., Quijano v. Hansen*, No. 1:23-CV-01706-CL, 2025 WL 1331491, at *5 (D. Or. Apr. 1, 2025) ("The Court has no reason to doubt the attorney's mathematical calculations or the data she used to make those calculations.").  This Court likewise finds that the allegations of the FAC, combined with the declaration of counsel and the evidence attached thereto, establish the merits and sufficiency of Claims 1 and 2 under the FLSA.  The requested recoveries under the FLSA, including minimum wages, overtime wages, and liquidated damages, range from $10,827.84 to $138,417.61 per Moving Party.  *See* Table G.

### b.    Claims 3 and 4 – Unpaid Wages under California Law

Moving Parties seek default judgment against the Vuzem Defendants on Claims 3 and 4 for unpaid wages under California law.

Claim 3 alleges failure to pay minimum wages under California Labor Code § 1182.12, which provides in relevant part that "on and after July 1, 2014, the minimum wage for all industries shall be not less than nine dollars ($9) per hour, and on and after January 1, 2016, the minimum wage for all industries shall be not less than ten dollars ($10) per hour."  Cal. Lab. Code § 1182.12(a).  Claim 4 alleges failure to pay overtime wages under California Labor Code § 510, which provides for overtime wages of not less than time and a half for hours worked in excess of 40 hours in a workweek.  *See* Cal. Lab. Code § 510(a).  Under California Labor Code § 1194, "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  Cal. Lab. Code § 1194(a).

The definition of employer for purposes of the California Labor Code is slightly different from the definition of employer under the FLSA.  *See Martinez v. Combs*, 49 Cal. 4th 35, 67

(2010).  Under California law, an employer is one who "employs or exercises control over the wages, hours, or working conditions of any person."  *Id*.  The same alleged facts that satisfy the definition of employer for purposes of the FLSA also satisfy the definition of employer under California law – Moving Parties allegedly were hired and directly employed by ISM Vuzem, d.o.o., *see* FAC ¶ 16, Robert and Ivan Vuzem allegedly exercised control over the employment relationship, *see id.* ¶ 33, and all Vuzem Defendants, including HRID-Mont d.o.o., allegedly were alter egos of each other, *see id*. ¶ 9.

The declaration of Moving Parties' counsel and attached evidence show that Moving Parties were not paid the minimum wages and overtime wages required under California law when they worked at the Tesla facility in Fremont, California.  *See* Dresser Decl. ¶¶ 66-71, 256; Tables C-1 through C-13, ECF 202.  Counsel provides wage spreadsheets for each of the Moving Parties, broken down by work week, showing:  regular hours worked up to 40 hours per week; overtime hours worked in excess of 40 hours per week; regular wages that should have been paid for the first 40 hours per week using the California minimum base pay rate of $9.00 per hour or $10.00 per hour, dependent on the time frame; overtime wages that should have been paid for hours worked in excess of 40 hours per week; flat rate wages actually paid, and the amount of underpaid wages.  *See* Dresser Decl. ¶¶ 66-71, 256; Tables C-1 through C-13.  The meaning of those spreadsheets is explained by counsel's declaration, and counsel also provides a table of the total amount of unpaid minimum wages and overtime wages sought by each of the Moving Parties under California law.  *See* Dresser Decl. ¶¶ 66-71, 256; Table G, ECF 204.

Moving parties' calculations of unpaid wages includes travel time.  Under California law, whether travel time is compensable depends on "[t]he level of the employer's control over its employees."  *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 587 (2000).  In *Morillion*, the California Supreme Court found that the time agricultural employees were required to spend traveling on their employer's buses was compensable because they were subject to control of their employer.  *See id*. at 578.  The *Morillion* court held that, "When an employer requires its employees to meet at designated places to take its buses to work and prohibits them from taking their own transportation, these employees are subject to the control of an employer, and their time

1    spent traveling on the buses is compensable as hours worked." *Id*. at 587 (internal quotation

2    marks and citation omitted).  As discussed above, Moving Parties have submitted declarations

3    stating that they were required to take company vans between their assigned housing units and

4    their work sites, that their supervisors gave them instructions during that travel, and that travel on

5    the company vans was required.  This Court previously found in the related *Novoselac* action that

6    similar evidence was sufficient to establish that travel time in the vans was compensable under

7    California law.  *Novoselac v. Vuzem*, No. 21-CV-08654-BLF, 2023 WL 3899011, at *8 (N.D. Cal.

8    June 7, 2023).  This Court likewise finds that Moving Parties in the present case have made the

9    requisite showing that their travel time is compensable as hours worked under California law.

10    Under California law, "[i]n any action . . . to recover wages because of the payment of a

11    wage less than the minimum wage fixed by an order of the commission or by statute, an employee

12    shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid

13    *and* interest thereon."  Cal. Lab. Code § 1194.2(a) (emphasis added); *see also Seviour-Iloff v.

14    LaPaille*, 80 Cal. App. 5th 427, 448 (2022), as modified on denial of reh'g (July 21, 2022)

15    ("[U]nder California law plaintiffs may recover liquidated damages and prejudgment interest.").

16    However, "[n]othing in this subdivision shall be construed to authorize the recovery of liquidated

17    damages for failure to pay overtime compensation."  *Id*.

18    Moving Parties properly request liquidated damages only with respect to Claim 3 for

19    unpaid minimum wages under California law, and request prejudgment interest with respect to

20    both Claim 3 for unpaid minimum wages and Claim 4 for overtime wages under California law.

21    *See* Table G.  Moving Parties calculate prejudgment interest on Claims 3 and 4 at the statutory rate

22    of 10% pursuant to California Labor Code § 218.6, titled "Actions for nonpayment of wages;

23    award of interest."  In *Novoselac*, this Court found that to be the appropriate rate with respect to

24    calculating prejudgment interest for unpaid minimum and overtime wages under California law.

25    *See Novoselac*, 2023 WL 3899011, at *9.

26    As noted above, other district courts in the Ninth Circuit have relied on attorney

27    declarations and summaries, supported by underlying data, in granting default judgment in wage

28    and hour cases.  *See, e.g., Quijano*, 2025 WL 1331491, at *5.  This Court finds that the allegations

United States District Court
Northern District of California

of the FAC, combined with the declaration of counsel and the evidence attached thereto, establish the merits and sufficiency of Claims 3 and 4 under California law. The requested recoveries under those claims, including minimum wages, overtime wages, liquidated damages, and prejudgment interest, range from $16,396.24 to $124,305.25 per Moving Party. *See* Table G.

### c.    Claim 5 – Rest Periods under California Law

Moving Parties seek default judgment against the Vuzem Defendants on Claim 5 for failure to provide rest breaks as required under California Labor Code §§ 226.7 and 512.

"[E]mployers who unlawfully denied their employees a meal or rest period on any given day must pay the employees an additional hour of pay at their regular rate." *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 105 (2022) (internal quotation marks and citations omitted). The FAC alleges that Plaintiffs were not provided all the rest periods to which they were entitled while working at the Tesla facility. *See* FAC ¶¶ 64-67. The declaration of Moving Parties' counsel and attached evidence show that Moving Parties were not given required rest periods when they worked at the Tesla facility in Fremont, California, and a calculation of the rest period compensation due to each Moving Party is provided. *See* Dresser Decl. ¶¶ 66-71, 256; Table D, ECF 204; Table G.

Moving Parties seek an award of prejudgment interest on their damages award under Claim 5 at the statutory rate of 7% set forth in California Civil Code § 3287, governing interest on damages. In *Novoselac*, this Court found that to be the appropriate rate with respect to calculating prejudgment interest on damages for missed rest periods under California law. *See Novoselac*, 2023 WL 3899011, at *9.

The Court finds that the allegations of the FAC, combined with the declaration of counsel and the evidence attached thereto, establish the merits and sufficiency of Moving Parties' claim for denial of rest periods under California law. The requested recoveries under Claim 5, including damages and prejudgment interest, range from $1,540.35 to $7,393.68. *See* Table G.

### d.    Claim 6 – Wage Statements under California Law

Moving Parties seek default judgment against the Vuzem Defendants on Claim 6 for failure to provide accurate wage statements in violation of California Labor Code §§ 226 and

1174.

California Labor Code § 226 requires employers to provide employees with accurate itemized statements in writing showing, among other things, their gross and net wages earned, total hours worked, all deductions, the dates included in the pay period, and the identifying information of the employee and employer, and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a).  These statements must be provided on a semimonthly basis or at the time of each wage payment. *See id*.  "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."  Cal. Lab. Code § 226(e).

The FAC alleges that the Vuzem Defendants did not provide Plaintiffs with any wage statements.  *See* FAC ¶¶ 68-76.  The declaration of Moving Parties' counsel and attached evidence provide a calculation of the recovery due to each Moving Party for the failure to provide wage statements.  *See* Dresser Decl. ¶¶ 66-71, 256; Table E, ECF 204; Table G.  The Court finds that the allegations of the FAC, combined with the declaration of counsel and the evidence attached thereto, establish the merits and sufficiency of Moving Parties' claim for failure to provide wage statements under California law.  The requested penalties under Claim 6 range from $1,450 to $4,000.  *See* Table G.

### e.    Claim 7 – Waiting Time Penalties under California Law

Moving Parties seek default judgment against the Vuzem Defendants on Claim 7 for waiting time penalties under California law.

California Labor Code § 203 provides that when an employer fails to pay all compensation due at the termination of employment, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Lab. Code § 203(a).

The FAC alleges that the Vuzem Defendants failed to pay wages due, including minimum wages and overtime wages, to Plaintiffs following termination of their employment.  *See* FAC ¶¶ 77-85.  The declaration of Moving Parties' counsel and attached evidence provide a calculation of the recovery due to each Moving Party for 30 days of waiting time penalties.  *See* Dresser Decl. ¶¶ 66-71, 256; Table E, ECF 204; Table G.  The Court finds that the allegations of the FAC, combined with the declaration of counsel and the evidence attached thereto, establish the merits and sufficiency of Moving Parties' claim for waiting time penalties under California law.  The requested waiting time penalties requested under Claim 7 are $3,585.00 per Moving Party.  *See* Table G.

### f.    Claim 8 – Class Action Wage and Hour Claim

Plaintiff Maslic seeks default judgment against the Vuzem Defendants on Claim 8, the class action wage and hour claim under California Law, on behalf of himself and the certified class.  The class claims mirror the California Labor Code violations asserted on behalf of the individual Plaintiffs in Claims 3-7 for unpaid minimum wages, unpaid overtime wages, failure to provide rest breaks, failure to provide wage statements, and waiting time penalties.  *See* FAC ¶¶ 101-106.  The Court certified the following damages class under Federal Rule of Civil Procedure 23(b)(3):

> All non-exempt individuals employed by ISM Vuzem, d.o.o., who worked at the Tesla facility located in Fremont, California, at any time from July 1, 2014, through April 30, 2016.

Order at 9, ECF 90.  The Court appointed Maslic as the class representative and the Law Office of William C. Dresser as Class Counsel.  *See id.*

The Court approved Maslic's proposed notice plan, which directed the Claims/Notice Administrator to mail a long form notice ("class notice"), provided in both English and Croation, directly to class members via international priority mail through the United States Postal Service. *See* Order at 4-5, ECF 105; Order at 2, ECF 186.  In addition, the Claims/Notice Administrator was to email the class notice to all class members for whom email addresses are known.  *See* Order at 4, ECF 105.  The Court approved Maslic's retention of Simpluris as the Claims/Notice Administrator.  *See* Order at 2, ECF 186.  Class members were given an opt-out deadline of 60

United States District Court
Northern District of California

1    days after the mailing of the class notice.  *See* Order at 5, ECF 105.

2        Class counsel, Mr. Dresser, provided Simpluris with a list of 209 class members.  *See*

3    Dresser Decl. ¶ 109.  Simpluris sent the class notice to 57 class members via email on November

4    7, 2024.  *See id.* ¶ 88.  None of the emails were returned as undeliverable.  Simpluris sent the class

5    notice to 128 class members via international priority mail on Friday, November 15, 2024.  *See id.*

6    ¶ 89.  Of those, 21 were returned as undeliverable, and were re-sent using alternative addresses

7    and email addresses.  *See id.* ¶¶ 90-91.  Class Counsel was not able to provide Simpluris with a

8    mail or email address for 24 class members.  *See id.* ¶ 92.

9        Simpluris received a total of 32 opt-outs.  *See* Dresser Decl. ¶ 94.  One of the opt-outs is

10   from Rebic, the named Plaintiff who is no longer represented by Mr. Dresser and who did not join

11   the present motion for default judgment.  *See id.* ¶ 107.  Subtracting the 32 opt-outs from the

12   original list of 209 individuals, there are 177 class members, including the thirteen Moving

13   Parties.  *See id.* ¶ 109.

14       The declaration of Class Counsel and attached evidence provide a calculation of damages

15   and penalties for the remaining 177 class members for violations of the California Labor Code.

16   *See* Dresser Decl. ¶¶ 110-182; Table H, ECF 204.  Because the Vuzem Defendants did not keep

17   records of hours worked, Class Counsel had to rely on other data such as declarations of class

18   members and Tesla entry logs to calculate the average number of hours worked by class members.

19   *See* Dresser Decl. ¶¶ 113-115.  Mr. Dresser settled on an average of 12.1 hours per day, Monday

20   through Saturday, and 8.25 hours per day every other Sunday.  *See id.* ¶¶ 113-128.  Those average

21   hours include one hour of travel time.  *See id.*  Mr. Dresser assumes that the regular hourly pay for

22   each class member was the applicable minimum pay of $9.00 per hour or $10.00 per hour during

23   the class period.  *See id.* ¶¶ 134-35.

24       "[W]here the employer has failed to keep records required by statute, the consequences for

25   such failure should fall on the employer, not the employee."  *Hernandez v. Mendoza*, 199 Cal.

26   App. 3d 721, 727 (1988).  "In such a situation, imprecise evidence by the employee can provide a

27   sufficient basis for damages."  *Id.*; *see also NewGen, LLC v. Safe Cig*, LLC, 840 F.3d 606, 617

28   (9th Cir. 2016) (finding that district court's grant of default judgment was not abuse of discretion

United States District Court
Northern District of California

where any necessity plaintiff to rely on estimates was due to defendant's failure to produce sales records).  Other courts in this district have granted default judgment in wage and hour class actions where the damages calculation was imprecise due to the defendant's failure to produce records.  *See Valenzuela v. Best-Line Shades, Inc.*, No. 19-CV-07293-JSC, 2024 WL 3331648, at *4 (N.D. Cal. July 8, 2024) (granting default judgment on class claims and awarding $1,642,572.92 in class damages).

To avoid duplicate recovery, Mr. Dresser deducted from the requested class damages those amounts recovered by three class members in the related *Novoselac* action.  *See* Dresser Decl. ¶¶ 170-71.  Mr. Dresser calculates the class damages to be $7,977,689.53 for the 177 class members who did not opt out.  However, if the individual recoveries sought in this motion by the thirteen Moving Parties are deducted, that figure becomes $7,013,991.86.  *See id.* ¶¶ 172-73; Table H.  Mr. Dresser suggests that the Court award the larger amount, subject to a set-off if Moving Parties collect from the Vuzem Defendants.  However, that would result in a duplicate award.  The Court finds it more appropriate to grant default judgment on Moving Parties' individual claims and reduce the class damages award by that amount.

The Court finds that the allegations of the FAC, combined with the declaration of counsel and the evidence attached thereto, establish the merits and sufficiency of the class claim in the amount of $7,013,991.86.

Maslic requests that the Court retain jurisdiction over this case pending distribution of the class damages to class members.  The Court finds that request to be appropriate and consistent with the practice in this district.

### g.    Claim 9 – Trafficking under TVPRA and CTVPA

Claim 9, for human trafficking, is asserted only by Maslic against the Vuzem Defendants and Eisenmann.  The claim is brought under both the federal trafficking statute, the TVPRA, and the California trafficking statute, the CTVPA.

### i.    Merits of Trafficking Claims

The TVPRA prohibits obtaining labor or services by one or more of four specified means: (1) "by means of force, threats of force, physical restraint, or threats of physical restraint to that

18

person or another person"; (2) "by means of serious harm or threats of serious harm to that person or another person"; (3) "by means of the abuse or threatened abuse of law or legal process"; or (4) "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."  18 U.S.C. § 1589(a).

Under the TVPRA, a trafficking victim "may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."  18 U.S.C. § 1595(a).  Thus, the TVPRA provides for liability against either a perpetrator of human trafficking or a beneficiary of human trafficking.

The California Penal Code provides in relevant part that, "A person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, is guilty of human trafficking[.]"  Cal. Penal Code § 236.1(a).  The CTVPA provides that:  "A victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action for actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief."  Cal. Civ. Code § 52.5(a).  "A prevailing plaintiff may also be awarded attorney's fees and costs."  *Id*.

The FAC alleges that the Vuzem Defendants coerced Maslic to perform labor and services in violation of these statutes by causing him "to believe that if they did not perform labor or services that they or another person would suffer serious harm, including abuse and threatened abuse of legal process[.]"  FAC ¶ 113.  Among other things, ISM Vuzem, d.o.o. allegedly threatened Maslic that he "would be subject to serious harm, including loss of visa status and civil and criminal prosecutions," *id* ¶ 115; "threatened to withhold pay if any of their employees became too sick to work or reported a job injury," *id*. ¶ 116; and "threatened to file a civil suit including even against injured and hospitalized employees," *id*. ¶ 117.  Robert Vuzem and Ivan Vuzem allegedly made some of the threats, and their threats to cause reputational harm was

19

serious because they "are powerful and can give a worker a bad name." *Id.* ¶ 120. As discussed above, the FAC alleges that ISM Vuzem, d.o.o., Ivan Vuzem, Robert Vuzem, and HRID-Mont d.o.o. are alter egos of each other. *See id.* ¶ 9. These and other allegations in the FAC, if accepted as true, establish direct liability against the Vuzem Defendants for trafficking Maslic in violation of the TVPRA and the CTVPA.

The FAC alleges that Eisenmann was a knowing beneficiary of a human trafficking scheme run by the Vuzem Defendants. Specifically, the FAC alleges that Eisenmann was "aware of the abusive and coercive tactics of ISM Vuzem, d.o.o.," and "continued to contract with and hire the Vuzem persons to provide labor for their projects knowing of the threats to obtain coerced labor." FAC ¶¶ 131-32. The FAC contains a number of other allegations that all Defendants "knowingly benefitted, financially or by receiving value from participation in the scheme which defendants knew or should have known engaged in acts of trafficking, or have knowingly obtained financial benefits from the coerced labor" of Maslic and others. *Id.* ¶ 136. Because the CTVPA does not provide for beneficiary liability, the allegations of the FAC do not give rise to liability against Eisenmann under that state statute. However, the allegations of the FAC, if accepted as true, establish that Eisenmann was a knowing beneficiary of the trafficking of Maslic, in violation of the TVPRA.

### ii.    Damages

Having determined that Maslic has established the merits of his trafficking claim against the Vuzem Defendants under the TVPRA and CTVPA, and against Eisenmann under the TVPRA, the Court must consider whether Maslic has established an entitlement to his requested damages under those statutes. He does not seek a double recovery – that is, he does not seek damages under both the TVPRA and the CTVPA. Because he has established the merits of his claims against the Vuzem Defendants and Eisenmann under the TVPRA, the Court limits its discussion of damages to the federal statute.

Both compensatory and punitive damages are available under the TVPRA. *See Solano v. Preciado*, 738 F. Supp. 3d 1356, 1368 (D. Or. 2024). Maslic seeks compensatory damages in the amount of $2,500,000, to be awarded jointly and severally against the Vuzem Defendants and

United States District Court
Northern District of California

1    Eisenmann.  That amount is supported by the declaration of his counsel and other record evidence.

2    Mr. Dresser explains that Maslic suffered serious, long-term injuries to his hip and back as a result

3    being trafficked by the Vuzem Defendants and forced to work in terrible conditions between 2014

4    and 2016; Maslic is now disabled and cannot work; but for those injuries, Maslic would have been

5    able to work an additional 16 years, earning at least $3,000 per week; and that Maslic's lost

6    income exceeds $2,000,000.  *See* Dresser Decl. ¶¶ 204-07.  Mr. Dresser also explains that Maslic

7    is disabled from doing many normal activities of life, such as dressing himself, taking care of his

8    yard, walking, and sitting, and now depends on his children for support.  *See id.* ¶¶ 208-211.

9    Maslic seeks an additional $500,000 in compensatory damages for those injuries.  *See id.*  Mr.

10   Dresser represents that juries in California have awarded between $200,000 to $6,000,000 for hip

11   injury.  *See id.*

12           Mr. Dresser's explanation of Maslic's claim for damages is supported by substantial

13   evidence, including the declaration of Maslic himself.  *See* Maslic Decl., ECF 195-2.  Maslic

14   describes the conditions of his employment by the Vuzem Defendants and at Tesla's Fremont,

15   California facility, asserting that he and others were forced to work long hours, even when sick or

16   injured, in unsafe conditions.  *See id*. ¶¶ 38-45, 54-61, 74-77.  Maslic states that Eisenmann had

17   supervisors present at all the sites where Maslic worked, that Eisenmann was aware of the long

18   hours and weekend hours he and others worked, and that Eisenmann demanded that every job be

19   done in the shortest time possible.  *See id.* ¶¶ 37, 44-45.  Maslic began to have back pain in 2016.

20   *See id.* ¶ 62.  He was taken to a doctor's office and given pain and muscle medications.  *See id.* ¶¶

21   92-93.  The Vuzem Defendants would not pay for other medical care.  *See id.* ¶¶ 94-95.  Maslic

22   later saw a doctor retained by the Vuzem Defendants who said his back and hips were injured.

23   *See id.* ¶ 99.  He was fired after that.  *See id.* ¶ 101. He has been unable to work since 2016

24   because of his hips.  *See id.* ¶¶ 189-190, 194.  Maslic expected to work until he was 70 years old,

25   so he has lost 16 years of income.  *See id.* ¶¶ 191-93.  He suffers from stress and anxiety.  *See id.* ¶

26   213.  Maslic had right hip replacement in June 2024.  *See* Dresser Decl. ¶ 205.

27           This evidence supports the claims of compensatory damages of $2,500,000.

28           Maslic seeks punitive damages in the amount of $2,500,000, comprised of $500,000

                                                    21

against each defaulting defendant, ISM Vuzem, d.o.o., HRID-Mont, d.o.o., Ivan Vuzem, Robert Vuzem, and Eisenmann.  "Punitive damages are generally appropriate" under the TVPRA because that statute "creates a cause of action for tortious conduct that is ordinarily intentional and outrageous."  *Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011).  "Courts routinely award punitive damages at a 1:1 ratio to compensatory damages for forced labor claims under the TVPRA."  *Solano*, 738 F. Supp. 3d at 1369.  The Court finds that Maslic has shown that the Vuzem Defendants and Eisenmann engaged in egregious conduct that warrants an award of punitive damages equal to compensatory damages in this case.

### f.      Conclusion re Eitel Factors 2 and 3

The Court finds that Moving Parties have established the merits and sufficiency of their claims.  "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important."  *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks and citation omitted).  Thus, the second and third *Eitel* factors strongly favor entry of default judgment in this case.

### 3.      Factor 4 – Sum of Money at Stake

Under the fourth *Eitel* factor, the Court must consider the amount of money at stake in relation to the seriousness of the Defendants' conduct.  "Default judgment is disfavored when a large amount of money is involved or unreasonable in light of the potential loss caused by the defendant's actions."  *Operating Engineers' Health & Welfare Tr. Fund for N. California v. Hansen*, No. 19-CV-08344-JSC, 2024 WL 3558851, at *4 (N.D. Cal. July 26, 2024) (internal quotation marks and citation omitted).  However, "when the sum is tailored to the specific misconduct of the defendant, default judgment may be appropriate."  *Id.* (internal quotation marks and citation omitted).

Here, Moving Parties request large damages awards, as set forth above.  However, the allegations of the FAC and evidence submitted in support of this motion establish flagrant violations of federal and state labor laws, as well as human trafficking laws, on the part of the Vuzem Defendants and Eisenmann.  Those violations occurred over a period of two years.

Under those circumstances, the Court finds that the fourth *Eitel* factor weighs in favor of

granting default judgment despite the large amount of damages sought by Moving Parties.

### 4. Factors 5 and 6 – Possibility of Factual Dispute or Excusable Neglect

Under the fifth and sixth *Eitel* factors, the Court considers whether there is the possibility of a dispute over any material fact and whether the default was due to excusable neglect. *See Ridola*, 2018 WL 2287668, at *13. The Vuzem Defendants and Eisenmann have defaulted. There is no possibility that they were unaware of this lawsuit, which is one of three related suits based on similar facts, two of which have gone to judgment. *See Lesnik v. Eisenmann*, Case No. 16-cv-01120-BLF; *Novoselac v. ISM Vuzem, d.o.o.,* Case No. 21-cv-08654-BLF. Eisenmann actually answered in this case but had its answer stricken when its counsel withdrew and it failed to appear through new counsel despite being granted an opportunity to do so. On this record, the Court finds that there is no possibility that the Vuzem Defendants or Eisenmann could dispute any material fact or establish that default was caused by excusable neglect.

The fifth and sixth Eitel factors weigh in favor of granting default judgment.

### 5. Factor 7 – Policy Favoring Decision on the Merits

The seventh *Eitel* factor, which is the policy favoring decisions on the merits, weighs against default judgment. In cases where the other factors weigh in favor of default judgment, the seventh factor will not be an impediment to granting default judgment. *See Ridola*, 2018 WL 2287668, at *13 ("Although federal policy favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate.").

### 6. Conclusion

The Court finds that the first through sixth *Eitel* factors strongly favor granting default judgment, and that those factors outweigh the seventh *Eitel* factor. Accordingly, Moving Parties' motion for default judgment on Claims 1-9 is GRANTED.

Moving Parties have indicated that they wish to bring a separate motion for attorneys' fees. Any such motion shall be filed by August 15, 2025.

The Court will enter judgment at this time. If Moving Parties obtain an award of attorneys' fees, they may move to amend the judgment to include such an award.

United States District Court
Northern District of California

## IV.   ORDER

(1)   Moving Parties' motion for default judgment is GRANTED as follows:

  (a)   Against Defendants ISM Vuzem, d.o.o., Ivan Vuzem, Robert Vuzem, and HRID-Mont, d.o.o., the motion for default judgment is GRANTED as to Claims 1-9;

  (b)   Against Defendant Eisenmann Corporation, the motion for default judgment is GRANTED as to Claim 9;

  (c)   Damages will be awarded consistent with this order, Table G to the Dresser Declaration reflecting damages for Claims 1-7 (attached), and Table H to the Dresser Declaration reflecting class damages for Claim 8 (attached). Table H reflects two "Total" damages amounts for the class.  As stated herein, the Court awards the lower "Net" amount in Table H, reflecting subtraction of the individual Plaintiffs' damages from class damages. Damages will be awarded to Saša Maslic on Claim 9 in the total amount of $5,000,000; and

  (d)   With respect to Claim 8, which is a class claim, the Court will retain jurisdiction pending final distribution of the damages award to class members.

(2)   Judgment will be entered concurrently with this order, in the damages amounts requested by Moving Parties, with the exception that class damages will be awarded in the amount of the "Net" Total in Table H, which excludes the individual Plaintiffs' damages, rather than the requested amount of the gross Total in Table H.

(3)   Plaintiff SHALL submit a report by the Claims/Notice Administrator within 30 days of final distribution, advising the Court as to the distribution to the class, payment of the Claims/Notice Administrator's fees, and a proposal for distribution of any remaining funds.

United States District Court
Northern District of California

(4)　　Moving Parties SHALL file any motion for attorneys' fees by August 15, 2025; and

(5)　　This order terminates ECF 197.

Dated:　July 31, 2025

_____
BETH LABSON FREEMAN
United States District Judge